James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Oren S. Giskan
GISKAN SOLOTAROFF
ANDERSON LLP
11 Broadway – Suite 2150
New York, New York 10004
(212) 847-8315

Thomas S. Rosenthal
LAW OFFICES OF THOMAS S.
ROSENTHAL
11 Broadway – Suite 2150
New York, New York 10004
(212) 582-6651

Edward Hernstadt
HERNSTADT ATLAS PLLC
11 Broadway – Suite 2150
New York, New York 10004
(212) 809-2501

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KYLE CANNON, LEWIS LYONS, and DIANNE LYONS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ASHBURN CORPORATION, WINES 'TIL SOLD OUT (WTSO.COM), and JONATHAN H. NEWMAN, <br><br> Defendants. | Civil Action No. <br><br><br><br><br> **COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

Plaintiffs, individually and on behalf of all others similarly situated, hereby bring this Complaint and state as follows:

**Introduction**

1.     This is a civil class action filed under 28 U.S.C. §§ 1332(d)(2) and (6) seeking monetary damages, restitution, injunctive and declaratory relief from defendants Ashburn Corporation ("Ashburn"), Wines 'Til Sold Out (WTSO.com) ("WTSO"), and Jonathan H.

Newman ("Newman") (together, "Defendants") for falsely and deceptively advertising original prices, and price discounts off the fabricated original prices, for many of the products offered for sale on the WTSO.com website, thereby inducing sales based upon those misrepresentations, and based upon Defendants' fraudulent acts and practices.

2.      Defendants' acts and practices are in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*, and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act   Specifically, Defendants have and continue to advertise false original prices and false discounts for wines sold on the WTSO.com website in order to induce consumers to purchase certain wines.   The class consists of consumers that purchased the falsely and fraudulently advertised products during the class period, paid money to Defendants for those wines, but (a) would not have purchased the wines if not for the false and fabricated discount misrepresentations, and/or (b) suffered ascertainable loss because the purchase price of the wines (i) was in an amount greater than the actual value of the wines, even at the purportedly discounted price, or (ii) otherwise did not reflect the advertised discount off of the true price of the wines.

3.      Defendants' pricing scheme was and is prominently displayed on the WTSO.com website which makes reference to "Original Price" retail prices that never existed and/or did not or do not constitute the prevailing market retail prices for such products.   Defendants misrepresented the existence, nature and amount of price discounts to consumers on the WTSO.com website by purporting to offer specific percentage discounts from expressly referenced but false former original prices for the wine products at issue.  Defendants' practices on the WTSO.com website are deceptive, based upon false pretense, and otherwise constitute an unconscionable or fraudulent scheme whereby Defendants mislead and deceive consumers into

2

purchases believed to be at a substantial discount from the original price when no such discount on the terms stated actually exists and the sales price itself, despite Defendants' purported discount, still does not reflect a reasonable price.

4.        Defendants' deception includes, but is not limited to, alternating between legitimate offers – with accurate representations – and fabricated and misleading offerings, all in an effort to conceal Defendants' fraudulent and misleading practices.

5.        New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, provides, in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

6.        Defendants' false price discounting scheme was consistently disseminated to consumers via emails to individuals who joined WTSO.com as "members," which means nothing more than the consumer signed up for free to receive emails, via applications ("apps") available to smart phone and tablet users, via facebook.com and via other social media sites.

7.        Upon information and belief, thousands of consumers purchasing wines from Defendants were and are victims of Defendants' deceptive, misleading and unlawful pricing scheme and thousands more will be deceived if Defendants' practices continue.

8.        Defendants knew that their competitive price advertising was false, deceptive, and misleading as defined by New Jersey state and federal statutory and regulatory laws.

9.        In its regulations, 16 C.F.R. § 233.1, the Federal Trade Commission ("FTC") explicitly defines the fictitious pricing scheme employed by Defendants as deceptive:

(a)     One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised in not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling a subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b)     A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of [their] business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

10.     At all relevant times, Defendants have been under a duty to Plaintiffs and others similarly situated to disclose the truth about their reference to "original price" prices and illusory discounts.

11.     Pursuant to the agreement between consumers and WTSO, including Plaintiffs and all others similarly situated, title to any wine purchases transfers from Defendants to the consumer in New Jersey, namely, "Title to, and ownership of, all wine passes from WTSO to the purchaser in the State of New Jersey and the purchaser takes all responsibility for the import of the package from New Jersey to his/her home state. Since we own all of our inventory and therefore arrange for transportation of the wine, WTSO is providing a service to, and acting on behalf of the purchaser."

12.     Plaintiffs bring this action on behalf of themselves and a class of consumers who purchased certain wines offered for sale as the result of Defendants' misleading, fabricated, deceitful and fraudulent scheme by Defendants on the WTSO.com website.

**JURISDICTION AND VENUE**

13.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) insofar as the amount in controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of states different from Defendants.

14.     This Court has personal jurisdiction over Defendants because each does systematic and continuous business and/or has a place of business in this Judicial District.

15.     Venue is proper in this District pursuant to 28 U.S.C § 1391 because Defendants are residents of this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

**THE PARTIES**

16.     Plaintiff Kyle Cannon is a resident of Memphis, Shelby County, and a citizen of the State of Tennessee.

17.     Plaintiff Lewis Lyons is a resident of Memphis, Shelby County, and a citizen of the State of Tennessee.

18.     Plaintiff Dianne Lyons is a resident of Memphis, Shelby County, and a citizen of the State of Tennessee.

19.     Defendant Ashburn Corporation is a New Jersey corporation with its principal place of business in Pennsauken, New Jersey.

20.     Defendant Wines 'til Sold Out is a subsidiary of Ashburn, operates as WTSO.com and is located in Pennsauken, New Jersey.

21.     Defendant Jonathan H. Newman is a distributor of wine in New Jersey and other states.  On information and belief, he is affiliated with Defendants WTSO and Ashburn and does business in the State of New Jersey.

## FACTUAL BACKGROUND

22.      So-called wine flash-sites have developed with the growth of the internet. Instead of typical brick and mortar stores that offer wine for sale, flash sites offer one or more wines to consumers at listed prices, sometimes with shipping included, in order to allow consumers to purchase wine without requiring them to go to any physical location simply access the flash site, usually in the comfort of their home or office, and often thousands of miles away from the location of the flash site.  The flash sites are on the internet as websites and operate out of states in which such sites are authorized.  Sales can be generated to purchasers in any state in which such purchases are authorized by law, including Tennessee, California, and New York, as well as many other states.  These wine flash sites have gained in popularity, particularly when they offer wines for sale at purportedly deep discounts, at least as advertised.

23.      One of these wine flash sites, WTSO.com, owned and/or operated by Defendants herein, has developed a practice wherein, for each wine offered for sale, an "Original Price" is listed, followed by a "Best Web Price (with Shipping)" and then "Our Price (Delivered)," followed by, in even larger font, the percentage (%) discount with an exclamation point.

24.      All consumers in every state that permits delivery of wines from out-of-state are welcome to visit the WTSO.com site for free as "members," merely by providing an email or electronic address and thereupon receiving several offers each day.  According to WTSO.com, the offers purportedly stay open for the rest of a calendar day until the wine sells out but, on information and belief, new offers replace prior ones even if a wine has not sold out, and wines previously represented by Defendants as sold out often reappear for sale on the WTSO.com website shortly after purportedly selling out.

**Wines Available only on the WTSO.com Website**

25.     Some of the offerings at issue in this action are a subset of the wines offered for sale by Defendants and are identified as follows:

(a)     The "Original Price" with a line superimposed over the listed price;

(b)     the "Best Web Price (With Shipping)" followed by $N/A with a line superimposed over the $N/A because the wines at issue are available nowhere else;

(c)     "Our Price (Delivered)" followed by the price at which Defendants offer the wine for sale;

(d)     the percentage discounted off of the purported and designated "Original Price," declared as a number, which often is in excess of 50% and is followed by an exclamation point;

(e)     the inclusion of a review by Defendant Newman – and only Defendant Newman – that includes a point score in the 90s followed by an exclamation point because the review always depicts an outstanding wine pursuant to well-recognized scoring on a 100 point scale;

(f)     the absence of any review depicted as a professional review other than by Defendant Newman; and

(g)     a description of the wine or information provided about the wine by "JHN," concealing the fact that it is the self-same Defendant Newman who accords the high point score with an exclamation point, who also sets forth the wine's purported origins, the vintage, winemaking technique, grape picking dates, and other information that should be provided by the winery, winemaker or vineyard, but not by a participant in the deceptive practices themselves.

26.     An example of the scheme set forth in Paragraph 25 is shown here:

3/1/2016                    WTSO.com - Fine Wines One At A Time



**Castlebank Vineyards 'Vivian's Vineyard' 2013 Dry Creek Valley Cabernet Sauvignon**

Free Shipping on 4 or more

| | |
|---|---|
| Original Price | ~~$35.00~~ |
| Best Web Price (With Shipping) | ~~$N/A~~ |
| Our Price (Delivered) | **$13.99** |

60% OFF!

**This stellar Cabernet Sauvignon was sourced from the famed Vivian's Vineyard in Sonoma's Dry Creek Valley AVA, and embodies the beautiful spirit of the extraordinary 2013 vintage. Blended with the remaining 4 red Bordeaux varieties for balance and aged in about one-third new French oak barrels for 16 months, the wine offers layer after layer of ripe fruit, polished tannins, and delicate oak accents. Get in on the ground floor of this tremendous deal while you still can!**

**92+ Points** - Jonathan H. Newman!
"A spectacular potpourri of fresh cut fruit that has nice complexity and depth of flavor including black cherries, dark chocolate, blackberries, toasty vanilla oak, and kirsch with a cinnamon spice box and mocha."

27.     Plaintiffs' and class members' reliance on Defendants' false price comparison advertising was reasonable.   In fact, empirical marketing studies provide an incentive for Defendants to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…. [A] comparative price advertisement can be construed as deceptive if it makes any representation, . . . or involves any practice that may materially mislead a reasonable consumer.
>
> * * *
>
> By creating an impression of savings, the presence of a higher reference price enhances subjects perceived value and willingness to buy the product. . . .  Thus,

if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Comparative Price Advertising:   Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52, 55-56 (Spring 1992).

28.     On information and belief, examples of wines offered for sale by Defendants pursuant to this deceitful scheme include, but are not limited to:

Mockingbird Hill Winery

Shadowood

Maxwell Creek

Camatta Creek

Rothbury Estate

Moon Meadow

Herringbone

Edwards & Chaffey

Viansa Winery

Stretto Winery

Vintage Wine Estates "Origami"

Obsidian

Castlebank Vineyards

Storm Chaser

Robert Storey Cellars

ROI

Pruet

Rocca

Eola Hills

Iron Door

Curlew Vineyards

Pointelle Winery

Bell Canyon Cellars

Kingsford Manor Winery

Stella

Canyon Creek

Stonehedge

Austin Creek Cellars

Carel

29.     Further research about these wines at issue reveals that those offered on the WTSO.com website are available only from Defendants and not from any other site, including any winery or producer's website.   Moreover, research into consumers who purchased these wines reveals that, upon information and belief, all purchases are made from WTSO.com and no other entity, whether it be a store, winery, producer, or other website.

30.     On those occasions wherein one of these wines is listed on a producer's website, it is listed as "sold out" even though no such bottles of said wine were sold from the producer's website.

31.     On information and belief, many of these wines offered on WTSO.com, albeit with different names, are in fact exactly the same wines as others offered on WTSO.com, but simply labeled differently.   As part of Defendants' deceptive and deceitful practices, these very same wines, albeit with different names, are advertised by Defendants with different "Original

Price[s]," different "Our Price," and different purported percentage discounts, but always not available from any entity other than Defendants.

32.     The deception is so profound and devious in the offers for Herringbone and Shadowood labeled wines that Defendant Newman recommends different food pairings for these wines even though they are, on information and belief, identical except for labeling and pricing -- and made by the same producer.

33.     On information and belief, many of the wines are in fact produced specifically and only for Defendants for sale on the WTSO.com website.  As such, these "private label" offerings have no "Original Price" other than what is deceptively depicted by Defendants on the website and, of course, are not available on any other website or in any store so there can be no "Best Web Price."  In addition, many of the producers from whom Defendants procure their wine for sale advertise private labeling for their clients.  As such, it is only the "Our Price" on the WTSO.com website that has relevance given that there is, in reality, no "Original Price" because there can be, *a fortiori*, no discount from a non-existent original price.  For purposes of example only, Defendants procure wines from Vintage Wine Estates and Underground Wine Company, as well as other bulk producers of wine, all of which provide custom branded or private labeling for Defendants.

34.     As to these wines that are available only on the WTSO.com website, Defendant Newman is prominently identified.  Not only does he review the wine at issue, to the exclusion of any other professional review, but, on most occasions, provides all the information about the wine when it is offered, albeit with Defendants identifying him only as "J.H.N."  Moreover, Defendants' scheme encompasses Defendant Newman's glowing reviews as well as his suggestion that the wines be purchased quickly.

**Wines Available Elsewhere, But Defendants' Deceptive and Overstated
Original Price**

35.     On other occasions, and as part of a separate but equally deceptive and misleading scheme, research, including inquiry of the winemaker and/or the winery, or pricing history, demonstrates that the true and real "Original Price" is significantly lower than the "Original Price" advertised and cited by Defendants, thereby substantially reducing the purported price discount that is otherwise misrepresented by Defendants and at which the wine at issue is sold.

36.     Two examples of this deceptive practice are shown below.  As to the Astralis, the stated "Original Price" of $350 a bottle is a wild exaggeration, as demonstrated by the release price listed by two reputable wine magazines, Wine Spectator and Wine Enthusiast, both of which uniformly stated that the release price for the wine was $225 a bottle (as set forth below). Of course, Defendants' exaggeration of $125 per bottle permits them to pretend they are offering the wine at a greater percentage discount than is actually the case.  As to the Mer Soleil, a simple search revealed that the original price was $32 per bottle and not $44.99 as stated by Defendants (a difference of almost 30%), again revealing that the percentage discount was wildly overstated (in the case of Mer Soleil, the "Our Price" listed by Defendants was a mere 12% discount off the real original price of $32, and not 38% as asserted by Defendants).

2/29/2016                    Clarendon Hills 'Astralis' Syrah 2007



### Clarendon Hills 'Astralis' Syrah 2007

**Free Shipping on 1 or more**

| | |
|---|---|
| Original Price | ~~$350.00~~ |
| Best Web Price (With Shipping) | ~~$N/A~~ |
| **Our Price (Delivered)** | **$119.99** |

## 66% OFF!

**A legendary Syrah! Astralis is the flagship of Clarendon Hills, one of Australia's (and the world's) finest producers. This is a stunning, impressive display of dark fruit mingling with smoky, savory flavors in a perfectly balanced, full-bodied structure. Excellent!**

**97 Points** - Wine Advocate!
"Aromas of pain grille, pencil lead, tar, underbrush, meat, licorice, and blackberry lead to a burly, masculine version of Astralis. It has tremendous grip, plenty of fine-grained tannin, layers of savory fruit, and 10-12 years of aging potential."

---

2/29/2016                    Clarendon Hills Astralis Clarendon 2007 | Wine Rating | Wine Spectator

## Tasting Note

# CLARENDON HILLS
### Astralis Clarendon 2007

Score: 95

**Release Price** $225
**Country** Australia
**Region** Australia
**Issue** Jul 31, 2012

### Tasting Note

Rich and expressive, playing its gorgeous blackberry and currant fruit against notes of licorice, black pepper and charred meat, lingering effortlessly against refined tannins. Displays impressive depth and precision. Syrah. Drink now through 2019. 583 cases made.
—HS

---

13

3/4/2016                                Gmail - Mer Soleil Santa Barbara County Reserve Chardonnay 2012 By Caymus Vineyards



Thomas Rosenthal <tommyrosenthal@gmail.com>

**Mer Soleil Santa Barbara County Reserve Chardonnay 2012 By Caymus Vineyards**
1 message

WTSO <now@wines.wtso.com>                                                    Thu, Mar 3, 2016 at 6:43 PM
Reply-To: now@wines.wtso.com
To: tommyrosenthal@gmail.com

If you are unable to see the message below, click here to view.



Full Wine Description



Mer Soleil Santa Barbara County Reserve Chardonnay
2012 By Caymus Vineyards
90 rating and 38% off!

Free Shipping on 3 or more

| | |
|---|---|
| Original Price: | ~~$44.99~~ |
| Best Web Price (With Shipping): | ~~$31.99~~ |
| Our Price (Delivered): | $27.99 |

Buy Now

| Description | |
|---|---|
| Appellation | Santa Barbara County |
| Unit Size | 750 ml |
| Varietal/Grapes | Chardonnay |
| Vintage | 2012 |
| Alcohol Content | 14.50 |

## 38% OFF!

From the producers of Caymus, in collaboration with the pristine 2012 Central Coast harvest comes this silky, barrel-aged Reserve Chardonnay. It offers a captivating melange of tropical and tree fruit aromas, complemented by vanilla, orange blossom, and stone minerality. Reminiscent of the bouquet, the flavor profile is enhanced by notes of oakspice and fresh butter, resulting in a ripe, creamy wine. This is a terrific white to drink any time of the year.

3/4/2016                          Mer Soleil Chardonnay Santa Barbara County Reserve 2012 | Wine Rating | Wine Spectator

## Tasting Note

### MER SOLEIL
Chardonnay Santa Barbara County Reserve 2012

Score: 90

**Release Price** $32

**Country** California

**Region** South Coast

**Issue** Jul 31, 2015

### Tasting Note

Offers a generous mix of tropical fruit, with guava, pineapple and mango flavors accented by melon, spice and floral notes. Well-focused and shaded by light toasty oak, this gains depth and nuance on the creamy finish. Drink now. 6,835 cases made.
—JL

14

37.     Defendants' layered deception further includes the sale of certain wines that are in fact available elsewhere, but about which it is stated on the WTSO.com website, "**Note:** At [    ]% off, this deal does not fit within our normal discount parameters, however given its very limited availability and high demand we believe it is a must have item for every cellar."  In other words, Defendants attempt to make their prices more attractive by pretending as though they are selling wines at a smaller percentage discount than their typical offers, which Defendants suggest are vert highly discounted as a matter of course but which, as demonstrated herein, are not, in fact, discounted at all.  In addition, many of the wines about which Defendants assert "very limited availability" are, in fact, widely available, which is why Defendants are not able to fabricate a pricing scheme for these wines.

38.     Defendants' scheme is not limited to domestic wines.  WTSO.com advertises many wines from countries in Europe and South America, and from Australia and New Zealand, for which there is no "Original Price" except as otherwise fabricated by Defendants, and for which, as a result, there can be no real percentage discount off that non-existent "Original Price." Many of these examples are found in wines imported by Opera Wine Imports, a company based in Pennsauken, New Jersey, only doors away from the listed address of Defendant Ashburn Alternatively, Defendants substantially misstate the "Original Price" of certain imported wines in order to create, falsely, the illusion of a greater discount than otherwise exists.  *See* the Astralis offering above.

39.     On information and belief, Defendant Newman is affiliated with Defendants WTSO and Ashburn, even though he is not depicted on the website as anything but an independent reviewer and experienced in the wine industry.

**The Plaintiffs and the Plaintiff Class**

40.     Plaintiff Kyle Cannon purchased several lots of wines from the WTSO.com website in which he was deceived as to the discount he was receiving because the "Original Price" was fabricated or otherwise misstated.  In reliance on Defendants' false and deceptive advertising, marketing and pricing schemes, Plaintiff Cannon purchased Obsidian, Castlebank, Mockingbird Hill, Maxwell Creek, and Kingsford Manor, to name as examples only some of the wines that were deceptively advertised and offered for sale by Defendants and purchased by this Plaintiff.  Kyle Cannon is a "member" of WTSO.com, purchased from WTSO.com several wines for which the discount was fabricated during the class action period, paid for these wines, and was damaged as a result thereof, buying wines from WTSO.com that were not the value they were purported to be by Defendants and were not discounted as depicted despite Defendants' representations, assertions, and advertisements.

41.     Plaintiff Lewis Lyons purchased several lots of wines from the WTSO.com website in which he was deceived as to the discount he was receiving because the "Original Price" was fabricated or otherwise misstated.  In reliance on Defendants' false and deceptive advertising, marketing and pricing schemes, Plaintiff Lewis Lyons purchased Herringbone, Austin Creek, Shadowood, Robert Storey, Mockingbird Hill, Curlew, Bell Canyon Cellars, Castlebank, and Maxwell Creek, to name as examples only some of the wines that were deceptively advertised and offered for sale by Defendants and purchased by this Plaintiff.  Lewis Lyons is a "member" of WTSO.com, purchased from WTSO.com several wines for which the discount was fabricated during the class action period, paid for these wines, and was damaged as a result thereof, buying wines from WTSO.com that were not the value they were purported to be

by Defendants and were not discounted as depicted despite Defendants' representations, assertions, and advertisements.

42.     Plaintiff Dianne Lyons purchased several lots of wines from the WTSO.com website in which he was deceived as to the discount he was receiving because the "Original Price" was fabricated or otherwise misstated.  In reliance on Defendants' false and deceptive advertising, marketing and pricing schemes, Plaintiff Dianne Lyons purchased Herringbone and Stonehedge, to name as examples only some of the wines that were deceptively advertised and offered for sale by Defendants and purchased by this Plaintiff.  Dianne Lyons is a "member" of WTSO.com, purchased from WTSO.com several wines for which the discount was fabricated during the class action period, paid for these wines, and was damaged as a result thereof, buying wines from WTSO.com that were not the value they were purported to be by Defendants and were not discounted as depicted despite Defendants' representations, assertions, and advertisements.

43.     Plaintiffs would not have purchased the wines at issue in the absence of Defendants' misrepresentations, fraud, and deception, and have suffered ascertainable loss as the result of their purchases, including, but not limited to, not only purchasing the wines based on those misrepresentations, fraud and deception, but paying more than the reasonable value of those wines, namely, by paying more for the wine than the advertised discount off of the real original price.  Consequently, Plaintiffs and the plaintiff class have been victimized by and suffered economic injury as a direct result of Defendants' unlawful, deceitful, unfair and fraudulent conduct.

44.     In addition to deceiving and defrauding Plaintiffs, Defendants have also engaged in the same conduct with respect to many other consumers.

45.    Plaintiffs bring this action on behalf of themselves, and all others similarly situated, pursuant to Fed.R.Civ.P. Rules 23(a), 23(b)(2) and 23(b)(3) on behalf of the following class (the "Class"):

> All persons who purchased from Defendants wines which were advertised for sale on the WTSO.com website with a fictional, fabricated or inflated "Original Price" from the later of six years prior to the institution of this action or Defendants' institution of their practices, and continuing until the final disposition of this action.

46.    Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers, directors and employees, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47.    The claim period commences from a date no later than six years prior to the filing date of this action or the date Defendants first employed their scheme to deceive, misrepresent or otherwise omit material facts in selling the wines at issue on the WTSO.com website, until the date of disposition of this action.  N.J.S.A. § 2A:14.1.

48.    The Class is so numerous that joinder of all members is impracticable.  Due to the nature of the commerce involved, the members of the Class are geographically dispersed throughout the United States. While the exact number of Class members is in the sole possession, custody and control of Defendants, Plaintiffs believe that there are thousands of members of the Class.

49.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among questions of law and fact common to the Class are:

a.  Whether, during the class period, Defendants used false "Original Price" price tags, and falsely advertised price discounts on wines offered for sale on the WTSO.com website;

b.  Whether, during the class period, the "Original Price" prices advertised by Defendants were the prevailing market prices for the products;

c.  Whether Defendants' use of false, deceptive and/or fraudulent price advertising constituted a violation of New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2;

d.  Whether Defendants' sales of wine products on the WTSO.com website was the result of an unconscionable commercial practice, deception, fraud or misrepresentation, with intent that consumers rely on such, in violation of New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2;

e.  Whether Defendants made false, misleading, or misrepresented statements of fact about the existence of, or amounts of, price reductions, in violation of New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2;

f.  Whether Defendants defrauded the Class by making false, misleading, or misrepresented statements of fact about the existence of, or amounts of, price reductions, in violation of New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2;

g.  Whether Defendants made false, misleading, or misrepresented statements of fact about the existence of, or amounts of, price reductions, in violation of The New Jersey Truth-in-Consumer Contract, Warranty and Notice Act;

h.  Whether Defendants' failure to provide the advertised discounts and/or wine at the advertised value breached their contracts with Plaintiffs and the Class;

i.  Whether the Class has suffered damages as a result of Defendants' actions, and if so, the measure and amount of such damages; and

j.  Whether injunctive and/or declaratory relief is appropriate.

50.   Plaintiffs' claims are typical of the claims of the other members of the Class they seek to represent.  Defendants' practices have targeted and affected all members of the Class in a similar manner, *i.e.*, they have all sustained damages arising out of Defendants' deceitful, false and/or fraudulent pricing scheme for wines on sale on the WTSO.com website.

51.   Plaintiffs will fully and adequately protect the interests of all members of the Class. Plaintiffs have retained counsel experienced in both complex class action and consumer fraud

litigation.  Plaintiffs have no interests that are adverse to or in conflict with other members of the Class.

52.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable.   The prosecution of separate actions by individual members of the class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.   A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical.  The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual Class members may be relatively small; and therefore, the expense and burden of individual litigation make it virtually impossible for class members to redress the wrongs done to them.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

## COUNT I
### (Violation of New Jersey Consumer Fraud Act)

53.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

54.   Plaintiffs and the Class are consumers within the meaning of the New Jersey Consumer Fraud Act ("CFA").

55.   Plaintiffs and the Class relied upon advertisements posted or utilized by Defendants, namely, "the term 'advertisement' shall include the attempt directly or indirectly by

publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan." N.J.S.A. 56:8-1(a).

56.    Plaintiffs and the Class purchased "merchandise" from Defendants, defined to "include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."  N.J.S.A. 56:8-1(c).

57.    Defendants are in the business of selling merchandise.  "The term 'sale' shall include any sales, rental or distribution, offer for sale, rental or distribution or attempt to directly or indirectly to sell, rent or distribute."  N.J.S.A. 56:8-1(e).

58.    Defendants have engaged in deceptive practices within the meaning of the CFA, in violation of N.J.S.A. 56:8-2, by (a) engaging in an intentional scheme that deceives consumers into purchasing wines on WTSO.com because of listed pricing and discounts that are false and fabricated, (b) intentionally advertising wines on the WTSO.com website with false, fabricated and fraudulent pricing details for the purpose of selling merchandise (wines) to consumers who rely on the false, fabricated and fraudulent pricing details to purchase wines, (c) misrepresenting original prices and discounts on merchandise (wines) in order to procure sales on the WTSO.com website, and (d) otherwise concealing accurate pricing in their sale and/or advertisement of merchandise (wines) on the WTSO.com website.

59.   Defendants intended that Plaintiffs and the Class would rely on the misrepresentations, deceptions and fraud so that Plaintiffs and the Class would purchase wines on the WTSO.com website, which they did.

60.    The foregoing acts, misrepresentations and failures to disclose caused ascertainable loss to Plaintiffs and the Class, namely, the purchase of wines (a) on the basis of deceptive original pricing and purported discounts that did not, in fact, exist, thereby not receiving the advertised discount, and/or (b) that have a lesser value than the price at which they were purchased.

61.    At all relevant times, Defendants conducted trade and commerce in New Jersey within the meaning of the CFA.

62.    On information and belief, Defendants' deceptive scheme was designed and implemented in New Jersey.

63.    As a consequence of Defendants' violation of the CFA, Plaintiffs and the Plaintiff class are entitled to a refund of all moneys Defendants acquired by means of their unlawful practices, pursuant to N.J.S.A. 56:8-2.11 and 12, as well as any and all penalties pursuant to N.J.S.A. 56:8-13.

64.    As an alternative, Plaintiffs and the Plaintiff class are entitled to the advertised discount off of the actual price of the wine purchased, in an amount to be determined at trial.

65.    As a consequence of Defendants' violation of the CFA, Plaintiffs and the Plaintiff class are entitled to threefold the damages sustained, injunctive relief against Defendants ordering them to cease their violations of N.J.S.A. 56:8-2, as well as reasonable attorneys' fees, filing fees and the reasonable costs of this suit.  N.J.S.A. 56:8-19.

66.    The statute of limitations runs from the later of the six year period immediately preceding filing of this Complaint or the date Defendants first employed their scheme to deceive, misrepresent or otherwise omit material facts in selling the wines at issue on the WTSO.com website, pursuant to N.J.S.A. § 2A:14-1.

**COUNT II**
**(Unjust Enrichment)**

67.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

68.    In the alternative to Count I, Defendants have been unjustly enriched by their deceptive and fraudulent practices.

69.    Plaintiffs and the Class conferred a benefit on Defendants by purchasing wines offered on the WTSO.com website and by paying money to Defendants for the purchase of those wines.

70.    The circumstances are such that it would be unjust and inequitable for Defendants to retain the benefit that they unjustly received from Plaintiff and the Class.

71.    Plaintiffs and the Class are entitled to recover or recoup damages from Defendants as a result of the unjust enrichment.

**COUNT III**
**(Fraud)**

72.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

73.    Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

74.    Defendants have defrauded Plaintiffs and the Class by Defendants have engaged in fraud by (a) engaging in an intentional scheme that deceives consumers into purchasing wines on WTSO.com because of listed pricing and discounts that are false and fabricated, (b) intentionally advertising wines on the WTSO.com website with false and fabricated pricing details for the purpose of selling merchandise (wines) to consumers who rely on the false and fabricated pricing

23

details to purchase wines, (c) intentionally misrepresenting original prices and discounts on merchandise (wines) in order to procure sales on the WTSO.com website, and (d) otherwise concealing accurate pricing and information in their sale and/or advertisement of merchandise (wines) on the WTSO.com website.

75.    Plaintiffs and the Class relied on these intentional misrepresentations and omissions in purchasing wines on the WTSO.com website.

76.    Plaintiff and the Class suffered damages as a result of Defendants' fraudulent conduct and should recover these damages, as well as punitive damages, from Defendants.

## COUNT IV
### (Breach of Contract)

77.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

78.    Defendants offered for sale wines at a stated price below the purported Original Price, which represented a discount of the difference between the Original Price and the offered sale price.

79.    Plaintiffs and other class members accepted the offers, upon the reasonable belief that they were receiving a discount on the wine equal to the monetary difference between the Original Price and the offered sale price or the percentage difference between the Original Price and the offered sale price.

80.    In fact, Plaintiffs and other class members did not receive the promised discount or reduction, because the advertised Original Price on each of the occasions at issue falsely stated that the suggested retail price of the wine was far higher than the actual suggested retail price or was utterly fabricated and, thus, Defendants were appearing to offer a far greater discount than, in fact, existed on the wines.

81.   Plaintiffs and other class members also accepted the offers, upon the reasonable belief that they were receiving wines of the value represented by Defendants. In fact, the value of the wines sold only at WTSO.com was the price at which the wine was sold by WTSO.com.

82.   Plaintiffs and other class members have been damaged in that they agreed to purchase wine at a greater discount than they, in fact, received from Defendants.

## COUNT V
### (Violation of New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14, *et seq.*)

83.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

84.   The New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, at N.J.S.A. 56:12-15, provides:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.

85.   Plaintiffs and other class members are "consumers" for purposes of this Act.

86.   Defendants' posting of their offered prices for wines on their internet website constitutes the "giv[ing] or display[ing]" "notices" or "signs" for purposes of the Act.

87.   Defendants' offering of wines on their internet website, as is set forth above, violates a clearly established legal responsibility of a seller established under Federal law, *i.e.*, the FTC's regulation codified at 16 C.F.R. § 233.1, which prohibits the use of fictitious former prices in the offering of goods as an alleged reduced price, as well as under the CFA.

88.   As a result of the foregoing, Plaintiffs and other class members are entitled to a civil penalty of not less than $100 per occurrence, plus actual damages.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

1.   An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

2.   A declaration that Defendants have violated the New Jersey Consumer Fraud Act, been unjustly enriched at the expense of Plaintiffs and the Class, committed fraud in their dealings with Plaintiffs and the Class, breached their contracts with Plaintiffs and members of the Class, and violated the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act;

3.   Awarding all compensatory and statutory damages, and civil penalties, to Plaintiffs and the Class;

4.   Enjoining Defendants from continuing to violate the New Jersey Consumer Fraud Act and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act;

5.   Awarding reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiff


By:___/s/ James E. Cecchi_____
     JAMES E. CECCHI

Dated:  March 15, 2016

Oren S. Giskan
GISKAN SOLOTAROFF
ANDERSON LLP
11 Broadway – Suite 2150
New York, New York 10004
(212) 847-8315

Thomas S. Rosenthal
LAW OFFICES OF THOMAS S. ROSENTHAL
11 Broadway – Suite 2150
New York, New York 10004

(212) 582-6651

Edward Hernstadt
HERNSTADT ATLAS PLLC
11 Broadway – Suite 2150
New York, New York 10004
(212) 809-2501

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiffs respectfully

demand a trial by jury as to all issues so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiff


By:___/s/ James E. Cecchi_____
    JAMES E. CECCHI

Dated:  March 15, 2016

Oren S. Giskan
GISKAN SOLOTAROFF
ANDERSON LLP
11 Broadway – Suite 2150
New York, New York 10004
(212) 847-8315

Thomas S. Rosenthal
LAW OFFICES OF THOMAS S. ROSENTHAL
11 Broadway – Suite 2150
New York, New York 10004
(212) 582-6651

Edward Hernstadt
HERNSTADT ATLAS PLLC
11 Broadway – Suite 2150
New York, New York 10004
(212) 809-2501

J. Mark Benfield
APPERSON CRUMP PLC
6070 Poplar Avenue
Memphis TN 38119
(901) 265-5125