# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

## COUNSELLORS AT LAW

| | | | |
|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | RICHARD K. MATANLE, II | RAYMOND J. LILLIE |
| BRENDAN T. BYRNE | DONALD F. MICELI | FRANCIS C. HAND | WILLIAM SQUIRE |
| PETER G. STEWART | A. RICHARD ROSS | AVRAM S. EULE | ALAN J. GRANT° |
| JAN ALAN BRODY | CARL R. WOODWARD, III | RAYMOND W. FISHER | STEPHEN R. DANEK |
| JOHN M. AGNELLO | MELISSA E. FLAX | | DONALD A. ECKLUND |
| CHARLES M. CARELLA | DAVID G. GILFILLAN | OF COUNSEL | MEGAN A. NATALE |
| JAMES E. CECCHI | G. GLENNON TROUBLEFIELD | | ZACHARY S. BOWER+ |
| | BRIAN H. FENLON | | MICHAEL CROSS |
| | LINDSEY H. TAYLOR | | CHRISTOPHER J. BUGGY |
| | CAROLINE F. BARTLETT | | JOHN V. KELLY III |

5 BECKER FARM ROAD
ROSELAND, N.J. 07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

JAMES D. CECCHI (1933-1995)
JOHN G. GILFILLAN III (1936-2008)
ELLIOT M. OLSTEIN (1939-2014)

°MEMBER NY BAR ONLY
+MEMBER FL BAR ONLY

May 6, 2016

VIA ECF

Hon. Renée Marie Bumb
United States District Judge
Mitchell H. Cohen United States Courthouse
1 John F. Gerry Plaza
Camden, New Jersey 08101

      Re:    Cannon, *et al*. v. Ashburn Corporation, *et al.*
              Civil Action No. 16-1452(RMB)(AMD)

Dear Judge Bumb:

    Plaintiffs submit this response to the request by Defendants Ashburn Corporation and Wines 'Til Sold Out (WTSO.com) (hereinafter "WTSO") for a pre-motion conference.[1] As set forth below, the well-pleaded allegations and averments contained in Plaintiffs' Complaint, satisfy the requirements set forth in Fed.R.Civ.P. 9(b) and 12.

    Thank you for your attention to this matter. If the Court has any questions regarding the foregoing, we are available at your convenience.

                      Respectfully submitted,

                      CARELLA, BYRNE, CECCHI,
                OLSTEIN, BRODY & AGNELLO, P.C.

                          /s/ James E. Cecchi

                          JAMES E. CECCHI

cc: All Counsel (via ECF)

---

[1] Plaintiffs previously addressed WTSO's arguments regarding class certification in their letter dated May 3, 2016.

Pre-Motion Letter
Cannon v. Ashburn Corp., C.A. No. 16-1452 (RMB)(AMD)
Page 1

**Plaintiffs Adequately Allege Their Claims**

Plaintiffs assert that WTSO offered and offers certain, specified wines or brands for sale on the WTSO.com website that falsify, and/or misrepresent the original price for those wines, the discount at which those wines are offered for sale and, in many cases, the source of the wine.[2] (*See, e.g.*, Complaint ¶¶ 1, 3, 25-26, 28-33, 58, 74, 80.) Moreover, as the WTSO letter itself makes clear, WTSO is on notice of many of the exact wines and brands about which Plaintiffs complain (see Complaint ¶ 28) and is uniquely in possession of its customers' order histories for all disputed wines as well as the original price and purported discounts for those wines.[3]

As the Complaint makes clear (Complaint ¶ 4), not every offered wine on the website constitutes an alleged breach of New Jersey statutory and common law. However, the legitimate offerings on the website are interspersed with the unlawful offerings at issue in this lawsuit. Moreover, the scheme alleged is not that defendants are offering wines for sale and then selling them at that same advertised price. Instead, WTSO denotes an original price that either is deceptive or does not truly exist at all, advertises a substantial percentage discount from that original price, and utilizes Jonathan Newman to provide ratings and other information that make it appear to the consumer that he or she is able to purchase a $35 bottle of wine (for example) at a 60% discount for $14 when, in fact, the $14 bottle of wine is, under no circumstances, discounted 60% from its original price. In these circumstances, the purchaser plainly is not obtaining (and cannot, by definition, obtain) any benefit of the bargain because, in fact, there is no bargain at all. The original price is, in actuality, the WTSO offered price and the loss is that

---

[2]   This case differs from other New Jersey consumer fraud actions regarding pricing of consumer items because, unlike those other retailers or sellers, WTSO is a flash website (*see* Complaint ¶¶ 22-24), which by its very name, requires rapid responses by consumers, namely, to purchase an offering before it sells out. In addition, this case involves a factual predicate wholly distinguishable from a typical retailer whereby the consumer can personally inspect the goods before purchasing. Instead, the WTSO consumer necessarily must rely upon the representations – and, as Plaintiffs specifically allege, misrepresentations and falsifications – made by Defendants as to, *inter alia*, original price, availability, discount, and quality.

[3]   The very first sentence of WTSO's letter highlights many of the claims underlying the lawsuit. One of the essential elements of Plaintiffs' Complaint is that, contrary to WTSO's assertion that it sells "wines by the bottle at discounted prices to consumers through its online website," many of the wines at issue are not discounted because the original prices are entirely fabricated. (*See e.g.* Complaint ¶¶ 3, 28, 33, 58, 74, 80.) WTSO letter's footnote 1 further demonstrates the impropriety of a motion to dismiss. First, the basic premise of this case is that WTSO does not sell the wines at issue at a "significant discount." (*See e.g. id.* ¶¶ 2, 3, 35, 58.) Second, although it may be technically true that "some wineries require WTSO to sell the wines with different labels that do not disclose the identity of the producing vineyard," that assertion does not explain that many of the wines offered on the website with different labels misstate the real producers' original price. (*See e.g. id.* ¶¶ 3, 26, 35, 58.). Third, the footnote does not even begin to explain that many of the wines at issue are made specifically for WTSO, are available nowhere else, and have no original price other than the price offered by WTSO. (*Id.*¶ 33.)

the purchaser: (a) does not have a $35 bottle of wine (b) did not obtain the advertised 60% discount off the true $14 original price (because the wine has not been discounted at all), and/or (c) is out-of-pocket $14 by purchasing a wine and relying upon a representation that the wine was actually a $35 bottle of wine.. (*See e.g.* Complaint ¶¶ 2, 25-26, 40-43, 60.)  The difficulty in uncovering the deception, misrepresentation, and fabrication is that the wines at issue in the lawsuit are, with reference to so-called wineries and/or vineyards appearing on their labels, simply fabricated, existing nowhere in the real world, other than on the WTSO.com website – a fact disclosed nowhere by defendants. (*See e.g. id.* ¶¶ 28-29, 33.) Moreover, although WTSO asserts that the sources of the original prices are "clearly set forth on its website," in reality the website represents that "the original price is the suggested retail price of the wine. It is set by the winery upon release of the wine."  As alleged, however, Defendants have fabricated the original so-called retail price of the wine because there is, in reality, no original price except that which is enumerated on the website and in many cases, no actual winery. (*See e.g. id.* ¶¶ 3, 26, 33.) Alternatively, the stated original price of the offering is wildly exaggerated because the winery itself has set a substantially lower price. (*See e.g. id.* ¶ 35, 58, 74, 80.)  Under any circumstances, WTSO plainly knows how to convey the unavailability of an original price if it so chose, but purposely sets an artificial original price as part of the discount scheme.[4]

It is ironic that WTSO in its letter relies on representations contained on its website when those representations are false, including the very name "WTSO" (Wines 'Til Sold Out).  For instance, WTSO declares: "Our wine deals are offered one-at-a time, beginning at midnight eastern each day. An offer will stay on the website until it has sold out. At that point, the next wine offer will appear as the new 'current offer.'"  In reality, as alleged (Complaint ¶ 24), WTSO replaces its offered wines on the website frequently throughout each day, regardless of whether the wine has sold out; often, the same wine will reappear as an offer on the website just days later (*id.*), contradicting the website's claims and undermines the letter's reliance on them.

**Plaintiffs Have Adequately Stated a Claim under the TCCWNA**

WTSO is mistaken when it asserts that Plaintiffs do not have claims under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") because they do not identify any clearly established legal right of a consumer or responsibility of a seller as established by State or Federal Law. Without more, N.J.S.A. § 56:8-2 establishes as an unlawful practice exactly that which Plaintiffs assert in their Complaint, namely, that WTSO has the responsibility not to engage in "any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."  a defendant violates the TCCWNA when it violates some well-established legal right, even in the absence of actual damages. *McGarvey v. Penske Auto Group, Inc.*, 486 Fed.Appx. 276, 278 (3d Cir. 2012); *Castro*

---

[4] Just as it conveys that a web price is not available, WTSO could similarly convey that there is no original price, but that would eliminate the discount ruse that is at the heart of WTSO's business model.

Pre-Motion Letter
Cannon v. Ashburn Corp., C.A. No. 16-1452 (RMB)(AMD)
Page 3

*v. Sovran Self Storage, Inc.*, 114 F.Supp.3d 204, 215, n. 6 (D.N.J. 2015); *Barrows v. Chase Manhattan Mortgage Corp.*, 465 F.Supp.2d 347, 362 (D.N.J. 2006).[5]

**Plaintiffs Have Suffered An Ascertainable Loss**

The heart of WTSO's argument that Plaintiffs fail to state a claim (for all of the causes of action) is that they cannot show an ascertainable loss, *i.e.*, that Plaintiffs fail to allege that they did not receive the benefit of their bargain. Not so. The Complaint alleges that Plaintiffs purchased wines that they were told by WTSO were worth far more than they paid. (*See* Complaint ¶¶ 40-43, 79-82.) Plaintiffs did not receive the advertised discount and they did not receive wine worth the original price stated by WTSO.[6] It is not, and should not be, a question of whether WTSO sent Plaintiffs a bottle of wine for the amount they paid. That cannot end the inquiry because such a standard would permit a broad array of fraudulent and misleading conduct. The wine cannot be separated from the deceptive scheme under which it was sold. WTSO maintains that the original price is set by the winery. In many cases, there is no real winery. In other cases, the winery does not sell this exact wine and if it is the same wine under a different name, the original price used by WTSO is not the real original price. Moreover, the information about the wines sold exclusively by WTSO is provided by (though this is not disclosed adequately) the same person who reviews the wine, who Plaintiffs allege also stands to gain from the sale of that wine. Instead of a bottle of wine with a real original price, a real winery, and an independent review, purchasers get a bottle of wine from an unknown source with a false and innacurately discounted price. Consumers are entitled to their reasonable expectations for a product based on the representations of the retailer. *See e.g., Smajlaj v. Campbell Soup Co.*, 782 F.Supp.2d 84, 98-99 (D.N.J. 2011)(Simandle, J.); *D'Agostino v. Maldonado*, 216 N.J. 168, 190 (2011).

---

[5] It is a claim such as this, where a retailer thumbs its nose at its obligations to be truthful in its advertising, that is perfectly suited for a TCCWNA claim.

[6] By way of example, Plaintiffs here were offered a $35 bottle of wine for $14, but WTSO did not deliver a $35 wine. WTSO could have said in its opinion (or in the opinion of its exclusive reviewer, Jonathan H. Newman) that the bottle was comparable to a $35 bottle of wine, but it did not. It advertised that it had an original price of $35 even though it was never offered for sale at that price.