# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KYLE CANNON, LEWIS LYONS, and DIANNE LYONS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ASHBURN CORPORATION, WINES 'TIL SOLD OUT (WTSO.COM), and JONATHAN H. NEWMAN,<br><br>Defendants. | Civil Action No. 16-1452(RMB)(AMD) |

---------------------------------------------------------------------------------------------------------------

## PLAINTIFFS' BRIEF IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT and CERTIFICATION OF SETTLEMENT CLASS

---------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Oren Giskan
GISKAN SOLOTAROFF
ANDERSON LLP
217 Centre Street, 6th Floor
New York, NY 10013
(212) 847-8315

Attorneys for Plaintiffs

Thomas Rosenthal
LAW OFFICES - THOMAS S.
ROSENTHAL
45 Main Street #1030
Brooklyn, NY 11201

Edward Hernstadt
HERNSTADT ATLAS PLLC
45 Main Street #1030
Brooklyn, NY 11201

## TABLE OF CONTENTS

**TITLE**                                                                    **PAGE(S)**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

I.      BACKGROUND .......................................................................................... 1

        A.      Summary of Plaintiffs' Allegations ................................................ 1

        B.      Settlement Negotiations and Discovery .......................................... 2

II.     MATERIAL TERMS OF THE SETTLEMENT ......................................... 3

        A.      Class Benefits .................................................................................. 4

        B.      Class Notice and Claim Verification Process .................................. 5

III.    LEGAL ARGUMENT ................................................................................. 5

        A.      Preliminary Approval of the Settlement is Appropriate. ................ 5

                1.  A Review of the Applicable Factors Favors Preliminary Approval. ............... 8

        A.      The Settlement Class Should Be Certified ...................................... 13

                1.  Numerosity ............................................................................ 14

                2.  Commonality ......................................................................... 14

                3.  Typicality .............................................................................. 15

                4.  Adequacy .............................................................................. 16

                5.  Predominance ....................................................................... 17

                6.  Superiority ............................................................................ 18

        A.      The Court Should Approve the Proposed Form and Method of Class
                Notice. .............................................................................................. 20

IV.     CONCLUSION ............................................................................................ 21

## **TABLE OF AUTHORITIES**

**Cases**                                                                                       **Page(s)**

*In re Aetna UCR Litigation*,
  2013 WL 4697994 (D.N.J. Aug. 30, 2013) ...........................................................................6

*Amchem Products v. Windsor*,
  521 U.S. 591 (1997)........................................................................................13, 17, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)............................................................................................17

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006).....................................................................................16

*Bernhard v. TD Bank, N.A.*,
  2009 WL 3233541 (D.N.J. Oct. 5, 2009)...................................................................8

*Bredbenner v. Liberty Travel, Inc.*,
  2011 WL 1344745 (D.N.J. Apr. 8, 2011) ..................................................................8

*In re Cardiazem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ..........................................................................16

*Carnegie v. Household International, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ...................................................................................19

*In re Cendant Corp. Litigation*,
  264 F.3d 201 (3d Cir. 2001)......................................................................................7

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....................................................................12

*In re Cigna Corp. Secs. Litig.*,
  2007 WL 2071898 (E.D. Pa. July 13, 2007)..............................................................8

*E.E.O.C. v. Com. of Pa.*,
  772 F. Supp. 217 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*, 977
  F.2d 738 (3d Cir. 1992)...........................................................................................10

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)......................................................................................6

*Elias v. Ungar's Food Products, Inc.*,
  252 F.R.D. 233 (D.N.J. 2008)..................................................................................14

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)......................................................................7, 8, 9, 11

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)..................................................6, 7

*Halley v. Honeywell International, Inc.*,
   2016 WL 1682943 (D.N.J. Apr. 26, 2016) ...................................20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................17

*Hanlon v. Palace Entertainment Holdings, LLC*,
   2012 WL 27461 (W.D. Pa. Jan. 3, 2012)......................................6

*In re Heartland Payment Sys, Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ......................................16

*Hegab v. Family Dollar Stores, Inc.*,
   2015 WL 1021130 (D.N.J. Mar. 9, 2015)....................................18

*Henderson v. Volvo Cars of N. Am., LLC*,
   2013 WL 1192479 (D.N.J. Mar. 22, 2013)...................................11

*In re Insurance Brokerage Antitrust Litigation*,
   282 F.R.D. 92 (D.N.J. 2012)....................................................20

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012) .......................................11, 12

*Jones v. Commerce Bancorp Inc.*,
   2007 WL 2085357 (D.N.J. July 16, 2007)....................................7

*Kalow & Springut, LLP v. Commence Corp.*,
   2012 WL 6093876 (D.N.J. Dec. 7, 2012) ...................................15

*Baby Neal ex rel. Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994).......................................................15

*Marcus v. BWW of North America*,
   687 F.3d 583 (3d Cir. 2012)................................................14, 15

*In re Mercedes-Benz Antitrust Litigation*,
   213 F.R.D. 180 (D.N.J. 2003)...................................................17

*In re Merck & Co., Inc. Vytorin ERISA Litigation*,
   2010 WL 547613 (D.N.J. Feb. 9, 2010) ......................................8

*Mullane v. Central Hanover Bank &Trust Co.*,
    339 U.S. 306 (1950)....................................................................................20

*O'Brien v. Brain Research Labs, LLC*,
    2012 WL 3242365 (D.N.J. Aug. 9, 2012) .............................................18

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)..............................................................10, 21

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ...........................................................10

*In re Schering-Plough/Merck Merger Litigation*,
    2010 WL 1257722 (D.N.J. March 26, 2012)........................................12

*Singleton v. First Student Management LLC*,
    2014 WL 3865853 (D.N.J. Aug. 6, 2014) .........................................7, 10

*Smith v. Professional Billing & Management Services, Inc.*,
    2007 WL 4191749 (D.N.J. Nov. 21, 2007) ............................................6

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)...................................................................14

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) (en banc)..............................5, 15, 17, 19

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005)..........................................................10, 17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)...........................................................................14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...................................................6, 11, 12, 19

*In re Whirlpool*,
    722 F.3d at 852 .....................................................................................14

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)................................................................................5

## Other Authorities

Fed. R. Civ. P. 23 ........................................................................ passim

Rubenstein, *Newberg on Class Actions* § 3:54 (5th ed. 2015)....................16

Rubenstein, *Newberg on Class Actions* § 4:65 (5th ed. 2015)....................18

Rubenstein, *Newberg on Class Actions* § 4:72 (5th ed. 2015)........................................................19

Rubenstein, *Newberg on Class Actions* § 13:14 (5th ed. 2015)........................................................8

## PRELIMINARY STATEMENT

The Parties jointly move for preliminary approval of the proposed Settlement of Plaintiffs' claims.  As detailed below, the proposed Settlement provides credits towards future purchases of wine from WTSO and a change in the allegedly deceptive practices that were the subject of Plaintiffs' Complaint.  For the reasons set forth herein, the Settlement should be preliminarily approved.

## I.   BACKGROUND

### A.   Summary of Plaintiffs' Allegations

Plaintiffs alleged in their Complaint that Defendant Ashburn Corporation d/b/a Wines 'Til Sold Out ("Defendant" or "WTSO") operated a website (WTSO.com) through which it sold wines, and that WTSO advertised "Original Prices" and percentage discounts that, in some cases, were misleading and deceptive.  The Complaint alleges that:

- some of the wines sold by WTSO were bottled exclusively for it (*see* Complaint ¶¶ 33-34);

- WTSO posted an "original price" for many of these offerings at which the wines were never sold, and stated a substantial discount off that "original price" to reach "our price," at which its wines were offered to consumers (*see* Complaint ¶¶ 2-3, 25, 28-29, 33, 58, 74, 80, 87);

- WTSO presented the wines at issue for sale at "our price" which was, in actuality, for those exclusive wines the only true price because they were never on sale elsewhere and were  only offered and available on the website (*see* Complaint ¶¶ 25, 29, 33, 58, 74, 80, 87); and

- for certain other wines that are available elsewhere, WTSO at times advertised an "original price" that was greater than the price at which such wines were released and originally sold by the winery, so that the stated reduction in price was, in reality, a smaller discount than advertised because the true original price was lower than the advertised "original price" (*see* Complaint ¶¶ 2-3, 35-36, 58, 74, 80, 87).

The Complaint further alleges that as a consequence of the described marketing tactics, although consumers were led to believe that they were the recipients of a discount when they

purchased, for example, a $32 bottle of wine for $14.99, they received no discount or one that was a fraction of the advertised discount.

WTSO denies that it engaged in any wrongful or fraudulent activity or that it fabricated any advertised pricing.  WTSO maintains that the wines it sold were of the advertised value. Further, in a Motion to Dismiss and to Strike filed on May 12, 2016, WTSO asserted legal defenses to the Complaint, arguing that Plaintiffs had failed to state a claim, and moved to strike the class action allegations.

On December 7, 2016, the Court granted in part and denied in part WTSO's motion to dismiss.  The Court denied WTSO's motion to dismiss Plaintiffs' New Jersey Consumer Fraud Act claims relating to the allegedly fabricated "original prices" for wines exclusively sold by WTSO, and dismissed, with leave to amend, the claims relating to allegedly inflated "original prices" for wines offered by WTSO.  The Court also denied WTSO's motion to dismiss Plaintiffs' breach of contract claims but dismissed Plaintiffs' unjust enrichment claims.  The Court also dismissed Plaintiffs' New Jersey Truth-in-Consumer Contract Warranty and Notice Act claims without prejudice, with the right to replead.  Finally, the Court denied without prejudice as premature WTSO's motion to strike the class allegations.

### B.    Settlement Negotiations and Discovery

After the Court's ruling on WTSO's motion to dismiss, the Parties agreed to attempt to resolve the case without further costly litigation. The Parties first met on January 18, 2017 to discuss settlement. Following that meeting, the Parties agreed to mediation, and subsequently selected the Honorable Dennis Cavanaugh (retired U.S. District Judge) as the mediator.

The Parties participated in an all-day mediation on March 24, 2017. Although progress was made, a settlement was not reached. The Parties continued to negotiate and an agreement in

principle was reached on April 27, 2017. At all times, the negotiations were conducted at arms' length.

Following the agreement in principle, the Parties drafted a settlement agreement (the "Settlement Agreement").[1]  This was a lengthy process and involved the resolution of numerous significant issues.

Prior to execution of the Settlement Agreement, counsel for Plaintiffs conducted confirmatory discovery to ensure the accuracy of the representations made by Defendant during the settlement negotiations. Defendant provided information requested by Plaintiffs' counsel and produced witnesses for Plaintiffs' counsel to question. Counsel for Plaintiffs executed the Settlement Agreement after they were satisfied that the representations made during negotiations were true, and they determined that the Settlement was fair based on the information provided by Defendant.

## II.     **MATERIAL TERMS OF THE SETTLEMENT**

Plaintiffs seek preliminary approval of the Settlement on behalf of the following Settlement Class:

> all residents of the United States who were the original purchasers of one or more Settlement Wines. Excluded from the Class are: (1) directors, officers and employees of Defendant; (2) the United States government and any agency or instrumentality thereof; (3) the judges to whom this case is assigned and any member of the judges' immediate families; and (4) Settlement Class Members who timely and validly opt to exclude themselves from the Settlement Class.

The "Settlement Wines" are all wines sold by WTSO during the Class Period, March 15, 2010 through November 1, 2016.

---

[1] A copy of the Settlement Agreement is attached to the Declaration of James E. Cecchi ("Cecchi Decl.") as Exhibit 1.

### A.  Class Benefits

The Settlement provides substantial economic benefits to the Class.   The economic benefit depends upon the types of wines purchased and, if applicable, the wine's purchase price.

1.     For every bottle of Settlement Wine listed on Exhibit A to the Settlement Agreement purchased for $12.99 or less for which no prior refund was given, the Class Member will receive a Credit of $1.75.

2.     For every bottle of Settlement Wine listed on Exhibit A to the Settlement Agreement purchased during the Class Period for $13.00 to $18.99 for which no prior refund was given, the Class Member will receive a Credit of $2.00.

3.     For every bottle of Settlement Wine listed on Exhibit A to the Settlement Agreement purchased during the Class Period for $19.00 or greater for which no prior refund was given, the Class Member will receive a Credit of $2.25.

4.     For every bottle of Settlement Wine listed on Exhibit B to the Settlement Agreement purchased as an individual offering (not as part of a combination package of different wines) during the Class Period for $19.99 or less for which no prior refund was given, the Class Member will receive a Credit of $ 0.50.

5.     For every bottle of Settlement Wine listed on Exhibit B to the Settlement Agreement purchased as an individual offering (not as part of a combination package of different wines) during the Class Period for $20.00 or greater for which no prior refund was given, the Class Member will receive a Credit of $ 0.75.

6.     For every other bottle of Settlement Wine purchased during the Class Period for which no prior refund was given, the Class Member will receive a Credit of $ 0.20.

The total value to the Class is estimated to be approximately $10.8 million.  The foregoing Credits may be used in increments of $2.00 per bottle of new purchases of wine from WTSO.  The Credits may be used for a period of one (1) year following the date that Credits are emailed to the Class Members.

In addition to these monetary benefits, as a result of the filing of the this lawsuit, WTSO Defendant replaced the advertising term "Original Price" with the term "Comparable Price" in its offers, addressing the practice that formed the factual basis of the Complaint, which is in itself valuable to Class Members.

### B.	Class Notice and Claim Verification Process

Notice of the Settlement will be sent by the Claims Administrator to Class Members to the last known email address provided by the Class Members to WTSO when they made purchases of wine.  If the email to the Class Member is undeliverable, the Settlement Administrator will mail a copy of the Class Notice to the Class Member by First Class mail.  The Notice of Settlement describes the litigation and settlement, including benefits to the Class Members.  Notice of the settlement will also be available on a dedicated website created by the Claims Administrator, and WTSO will include a link to the Settlement Website on WTSO.com. In order to receive their Credits, Class Members will need to click on a link in the email, which will ask Class Members to verify their current address and to identify any refunds they received for Settlement Wines during the Class Period.   The Claims Administrator will email a code to access the Credits to all Class Members who properly complete the simple verification process.

### III.	LEGAL ARGUMENT

### A.	Preliminary Approval of the Settlement is Appropriate.

Where parties propose to resolve class action litigation through settlement, they must obtain court approval.  Fed. R. Civ. P. 23(e); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc).  That said, "[c]ompromises of disputed claims are favored by the courts," *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910), "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

> The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).  The proposed Agreement here meets all the requirements for preliminary approval by this Court.

"Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing."  *In re Aetna UCR Litigation*, 2013 WL 4697994, at *10 (D.N.J. Aug. 30, 2013).  This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See In re GMC*, 55 F.3d at 785; *Hanlon v. Palace Entertainment Holdings, LLC*, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012) (explaining that at the preliminary approval phase, the "court must only 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms'" (quoting *Manual for Complex Litigation* (Fourth), § 21.632 (2011))).  "Preliminary

approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Aetna UCR*, 2013 WL 4697994, at *10.   "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."   *Id.*; *see also Smith v. Professional Billing & Management  Services, Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *Jones v. Commerce Bancorp Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient.").

 "An initial 'presumption of fairness for the settlement is established if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *In re Cendant Corp. Litigation*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001)); *In re Gen. Motors Corp.*, 55 F.3d at 785. While consideration of the requirements for final approval is unnecessary at this stage, it is important to consider the final approval factors at the preliminary approval stage in order to identify any issues that could impede final approval. *Singleton v. First Student Management LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  All of the relevant factors weigh in favor of the Settlement proposed here.[2]  The proposed Agreement is fair, adequate, and reasonable. Therefore, this Court should preliminarily approve the Settlement and certify a Settlement class.

### 1.    A Review of the Applicable Factors Favors Preliminary Approval.

This Settlement is the product of numerous arms-length negotiations, including mediation before former District Judge Dennis M. Cavanaugh.  *See* Rubenstein, *Newberg on Class Actions* § 13:14 (5th ed. 2015) ("The primary procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-lengthnon-collusive negotiations.").  The participation of a mediator in this case is further assurance that the settlement is the result of arms-length negotiations.  *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.") (internal quotation marks omitted); *see also Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (finding that the standards for preliminary approval were met where the settlement was the product of "serious negotiation" between counsel and conducted pursuant to mediation by a retired judge); *In re Cigna Corp. Secs. Litig.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("[I]t is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as mediator.").

The third *Girsh* factor requires the Court to "consider the 'degree of case development that Class Counsel have accomplished prior to Settlement,' including the type and amount of discovery already undertaken."  *In re Merck & Co., Inc. Vytorin ERISA Litigation,* 2010 WL

---

[2]    It is premature to consider the second *Girsh* factor, the reaction of the class to the Settlement, since it has not yet been presented to the Class.

547613, at *7 (D.N.J. Feb. 9, 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)) "In short, under this factor the Court considers whether the amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'" *Merck ERISA*, 2010 WL 547613, at *7 (alteration in original) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)). This factor weighs in favor of approval of the Settlement.

As generally described above, the basic facts were well known to Plaintiffs based upon extensive (A) review of many thousands of WTSO's wine offers over several years, including, but not limited to, comparison of these offers to the offered retail price at wineries and other retail stores, (B) research of (i) federal and state laws, rules and regulations governing the wine industry, (ii) label approvals by the federal government to determine wineries and which wines were exclusive to WTSO, (iii) purchase patterns of the offered wines, (iv) the history, location, vineyards (if applicable), and current iteration of wineries and wine-making facilities, (v) offerings by wineries and wine-making facilities, and (vi) wine publications' information about the offered wines, including suggested retail price or release price, and (C) compilation of lists of wine names, labels and offerings by WTSO during the Class Period, including "Original Price," WTSO's "Our Price," frequency of offers for listed wines, and the entity bottling the wine as well as the winery listed on the label on the back of the bottle. The Parties exchanged informal discovery during their initial settlement meeting on January 18, 2017, including information related to how WTSO sources, values, and prices its wines. Such information included how WTSO determined the advertised "Original Prices" and offered prices. Plaintiffs' counsel provided information that it had compiled through review and research. In addition, after the

basic terms of the Settlement were agreed to, Plaintiffs engaged in confirmatory discovery by interviewing multiple members of the WTSO team regarding this information.   This informal and confirmatory discovery allowed Plaintiffs to evaluate and confirm the merits of the litigation.

The fourth, fifth and sixth *Girsh* factors (risks of establishing liability, damages and maintaining the class action through trial) are appropriately considered together for purposes of preliminary approval.  *Singleton*, 2014 WL 3865853, at *6.   The case was settled after the Court's ruling on WTSO's Motion to Dismiss, two in-person settlement conferences (one with a retired District Court Judge), numerous telephonic settlement conferences over the course of several months, and informal discovery.   WTSO's Motion to Dismiss sought to dismiss Plaintiffs' Complaint in its entirety and, in the alternative, to strike Plaintiffs' class certification. The Court, *inter alia,* denied WTSO's motion to dismiss the New Jersey Consumer Fraud Act claims and to strike Plaintiffs' class certification.   WTSO has vigorously disputed any liability in this case and presented potentially meritorious defenses in its Motion to Dismiss and settlement conferences.   These defenses, in addition to the Court's ruling on the Motion to Dismiss, made clear the risks in establishing liability and damages, as well as maintaining the class action through trial, in this litigation.   Counsel's judgment that the settlement is fair and reasonable is entitled to great weight.  *See E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991), *aff'd sub nom*. *Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, *taken as a whole*, is fair, reasonable and adequate to all concerned." (emphasis in original) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982));

*see also Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is "entitled to rely upon the judgment of experienced counsel for the parties")), *aff'd*, 148 F.3d 283 (3d. Cir. 1998).

Class Counsel are experienced and well-respected attorneys in, among other fields, class action litigation, having been involved in the litigation and resolution of several of the seminal cases in the field.  *See* Cecchi Decl., Exs. 2 and 3 (Firm Resumes).  Their judgment that the settlement is fair and reasonable should weigh in favor of preliminary approval.

The seventh *Girsh* factor is neutral.  Although WTSO may be able to withstand a greater judgment, the fact that a defendant *can* pay more does not make an otherwise reasonable settlement unreasonable.  Rather, as discussed above, Plaintiffs determined through informal and confirmatory discovery that the settlement is reasonable and provides a substantial benefit to the class.  *See Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *11 (D.N.J. Mar. 22, 2013) ("Plaintiffs acknowledge that 'there is currently no indication that Volvo here would be unable to withstand a more significant judgment,' but 'to withhold approval of a settlement of this size because it could withstand a greater judgment would make little sense where the [settlement agreement] is within the range of reasonableness and provides substantial benefits to the Class.'") (citing cases where settlement was approved despite defendants' ability to withstand a greater judgment); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484 (D.N.J. 2012) ("But even assuming there are sufficient funds to pay a greater judgment, the Third Circuit has found that a defendant's ability to pay a larger settlement sum is not

particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement") (internal quotations and citations omitted).

The final two *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. As this Court has often explained, "according to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth factor)." *In re Schering-Plough/Merck Merger Litigation*, 2010 WL 1257722, at *12 (D.N.J. March 26, 2012). To do so, a Court considers "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . compared with the amount of the proposed settlement." *Warfarin*, 391 F.3d at 538 (citation omitted). Additionally, in conducting this evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *Johnson & Johnson*, 900 F. Supp. 2d at 484-85 (alteration in original) (internal quotations and citations omitted).

Recognizing that a settlement, by definition, involves Class Members receiving less than the full value of their claims if established, courts have commonly approved settlements that provide less than the full value of the class's claims if such claims are proven. *See, e.g.*, *Warfarin*, 391 F.3d at 538-39 (approving a 33% settlement value); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350-51 (S.D. Fla. 2011) (approving a settlement for between 9% and 45% value); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460-

61 (S.D.N.Y. 2004) (approving a settlement that was "not rich in comparison to the vast damages Plaintiffs claim to have suffered").

This Settlement offers substantial benefits to Class Members.  Class members receive significant Credits for future purchases, the amount of which depends, in part, upon the price and classification of the purchased wines (i.e. whether the particular wine is listed on Exhibit A, Exhibit B, or neither) that Class Members purchased during the Class Period.  Plaintiffs believe that these Credits are a reasonable percentage of the alleged damages suffered by Class Members, given the allegations in the Complaint regarding "Original Price" and in consideration of the risks of litigation

Finally, Class Counsel's fee request is a reasonable one.  Class Counsel have agreed to seek no more than $1.8 million in combined attorneys' fees and expenses. This amount reflects a reasonable percentage of the benefits conferred on the Class. They reached this agreement only after reaching agreement on all other material terms of the Settlement.  The Settlement is in no way contingent upon attorneys' fees.

**A.    The Settlement Class Should Be Certified.**[3]

Courts may certify class actions for the purposes of settlement only.  *See, e.g.*, *Amchem Products v. Windsor*, 521 U.S. 591, 620 (1997).  When certifying a settlement-only class, the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.  However, all of the other requirements of Rule 23 must be satisfied when satisfying a settlement class.  *Id.* Plaintiffs respectfully submit that this Court should preliminarily certify the Settlement Classes under Rules 23(a) and 23(b)(3).

---

[3] WTSO has stipulated to certification of a Settlement Class for the purposes of this settlement only, and does not join in the arguments contained in this section of the Motion.

In this case, all of the requirements of Rule 23(a) and Rule 23(b)(3) are readily met. Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that their joinder before the Court would be impracticable." "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Marcus v. BWW of North America*, 687 F.3d 583, 595 (3d Cir. 2012). Here, the Class is estimated to include many thousands of Class Members and so numerosity is satisfied. *Stewart v. Abraham*, 275 F.3d 220, 226–28 (3d Cir. 2001). *See, e.g.*, *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 242 (D.N.J. 2008) (numerosity satisfied with class of "at least tens of thousands" of members); *see also In re Whirlpool*, 722 F.3d at 852 (numerosity satisfied where thousands of allegedly defective washers were shipped into the state). Here, where the number of Class Members is approximately 240,000, numerosity is easily met.

### 2.    Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Importantly, "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class member[s]." *Marcus*, 687 F.3d at 597 (citation and internal

quotation marks omitted). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (quotation marks and emphasis omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (explaining that, for commonality to be satisfied, the answer to the common question must help "drive the resolution" of the litigation) (citation and quotation marks omitted).

Applying these principles, it is evident that the commonality requirement of Rule 23(a)(2) is easily met here because Plaintiffs allege that WTSO advertised the sale of wine to every Class Member by promoting a discounted price from an "original price" that was allegedly non-existent, inflated or otherwise misleading.

### 3.    Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims . . . of the class." As the Third Circuit explained:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

*Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994); *see also Marcus,* 687 F.3d at 598 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class.") (citation and quotation marks omitted).

Here, the typicality requirement is met because the Class Representatives suffered the same alleged injury—purchasing wine through WTSO.com where such wines were advertised with an "original price" —as the other Class Members. Additionally, New Jersey courts have

- 15 -

held that the New Jersey Consumer Fraud Act applies even when the alleged injury occurs outside of the state. *Kalow & Springut, LLP v. Commence Corp.*, 2012 WL 6093876 (D.N.J. Dec. 7, 2012)  Furthermore, to the extent New Jersey law would not apply to all Class Members, variations in state laws do not impact the typicality analysis.  *See Sullivan*, 667 F.3d at 304 ("state law variations are largely 'irrelevant to certification of a settlement class'") (quoting *Warfarin II,* 391 F.3d at 529).  The common-law and consumer-protection claims asserted in this case "are recognized in some form in all jurisdictions and therefore available for all class members. . . . Despite possible state-by-state variations in the elements of these claims, they arise from a single course of conduct . . . and a single set of legal theories." *In re Heartland Payment Sys, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (internal quotation marks omitted); *see also In re Cardiazem CD Antitrust Litig.*, 218 F.R.D. 508, 519 (E.D. Mich. 2003) (finding class representatives adequate "to prosecute claims under the laws of other states").

### 4.    Adequacy

Rule 23(a)(4) requires that the named representatives "will fairly and adequately protect the interests of the class."  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted); *see also* Rubenstein, *Newberg on Class Actions* § 3:54 (5th ed. 2015).  Here, each plaintiff purchased wine based upon the same representations and suffered alleged injuries of the same nature, and so their interests are fully aligned with all other Class Members.

Second, class counsel must be adequate under Fed. R. Civ. P. 23(g).  That requirement is satisfied here as Class Counsel have extensive experience in prosecuting complex class action cases.  *See* Cecchi Decl., Exh. 2 Giskan, Solotataroff, & Anderson LLP  Law Firm Resume; Exh. 3, Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. Law Firm Resume.

### 5.  Predominance

In order to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance tests asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  *Sullivan*, 667 F.3d at 297 (quoting Rubenstein, *Newberg on Class Actions* § 4:25 (4th ed. 2010)).  The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 597.  The rule, however, "does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (internal quotation marks and alterations omitted).  Rather, predominance is determined by whether "the efficiencies gained by class resolution of common issues are outweighed by individual issues."  *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005); *In re Mercedes-Benz Antitrust   Litigation*, 213 F.R.D. 180, 186 (D.N.J. 2003) (predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members").

Common issues predominate here.  The key question posed in this case—whether WTSO's sales technique was deceptive—is a common one.  If resolved in one stroke, those issues would substantially advance the litigation.  Moreover, in the settlement context, to the extent New Jersey law would not apply to all Class Members, differences in state law do not

defeat predominance.  *See Sullivan*, 667 F.3d at 299-302 (3d Cir. 2011) (explaining that "as long as a sufficient constellation of common issues binds class members together, variations in the sources and application of applicable laws will not foreclose class certification") (internal quotation marks omitted).  Because "the defendant's conduct was common as to all of the class members," common issues predominate despite "idiosyncratic differences" between state laws. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998) (finding predominance satisfied where class members brought claims under "local variants of a generally homogenous collection of causes which include products liability, breaches of express and implied warranties, [] 'lemon laws, [and] state consumer protection laws").

### 6.     Superiority

Finally, Rule 23(b)(3) requires that a showing that a "class action is superior to other available methods for fair and efficient adjudication of the controversy."   Relevant considerations include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23.

A class action suit is superior to any other form of adjudication because it provides the best way of managing and resolving the claims at issue here.  The superiority requirement asks the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."   *Hegab v. Family Dollar Stores, Inc.*, 2015 WL 1021130, at *4 (D.N.J. Mar. 9, 2015) (quoting *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d Cir. 1996)).  The class action mechanism is superior to its alternatives, particularly

with respect to settlements, because it ensures that the claims of the absent class members will be resolved efficiently.  *O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) (finding superiority because, *inter alia*, "denying certification would require each consumer to file suit individually at the expense of judicial economy").  Moreover, where individual claims are small, "a class action is almost automatically superior to alternative forms of adjudication[.]"  Rubenstein, *Newberg on Class Actions* § 4:65 (5th ed.).

Consideration of judicial economy and prompt resolution of claims underscore the superiority of the class action in this case.  By contrast, compensation resulting from litigation is highly uncertain and may not be received before lengthy, and costly, trial and appellate proceedings are complete.  In addition, the Settlement obviously removes the overwhelming and redundant costs of individual trials.  *See Sullivan*, 667 F.3d at 310-12.

The superiority requirement is also met here because each Class Member's damages are likely too small to justify bringing an individual action.  *See Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.").

Manageability concerns, moreover, while "by [] far, the most critical concern in determining whether a class action is a superior means of adjudication," Rubenstein, *Newberg on Class Actions* § 4:72 (5th ed. 2015), are irrelevant in the settlement context.  *See Amchem*, 521 at 620.  In particular, because the class is proposed for settlement, manageability concerns presented by variances in state law do not defeat a finding of superiority.  *See Sullivan*, 667 F.3d at 303-04 ("Because we are presented with a settlement class certification, we are not as concerned with formulating some prediction as to how variances in state law would play out at

trial, for the proposal is that there be no trial.  As such, we simply need not inquire whether the varying state treatments of [the] claims at issue would present the type of insuperable obstacles or intractable management problems pertinent to certification of a litigation class." (internal quotation marks, citations, and alterations omitted)).  Simply put, state law variations are largely "irrelevant to certification of a settlement class."  *Warfarin II*, 391 F.3d at 529.

### A.    The Court Should Approve the Proposed Form and Method of Class Notice.

Before granting final approval to a class action settlement, the Court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement.  Fed. R. Civ. P. 23(e)(1).  The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Halley v. Honeywell International, Inc.*, 2016 WL 1682943, at *17 (D.N.J. Apr. 26, 2016) (quoting *Mullane v. Central Hanover Bank &Trust Co.*, 339 U.S. 306, 314 (1950)).  In the class action context, the Court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class.  *In re Insurance Brokerage Antitrust Litigation*, 282 F.R.D. 92, 109 (D.N.J. 2012) (quoting *Prudential*, 148 F.3d at 306).

The proposed notice program satisfies due process and Rule 23.  As discussed above, the notice plan provides for direct, individual notice via email based on WTSO's customer email databases.  *See* Fed. R. Civ. P. 23(c)(2) (explaining that individual notice should be provided to all members who can be identified through reasonable effort). *Cf. Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950) ("[N]otice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since any objection sustained

would inure to the benefit of all."). If the email to the Class Member is undeliverable, the Settlement Administrator will mail a copy of the Class Notice to the Class Member by First Class mail. The Notice of Settlement describes the litigation and settlement, including benefits to the Class Members. Notice of the settlement will also be available on a dedicated website created by the Claims Administrator, and WTSO will include a link to the Settlement Website on WTSO.com.

The Settlement Notice itself also satisfies due process and Rule 23. *See* Ex. C, Settlement Agreement; *see also Prudential*, 148 F.3d at 328 (approving notice that "provided all of the required information concerning the class members' rights and obligations under the settlement, detailed the procedure for opting out, entering an appearance, and filing objections, notified the [class members] that if they did not opt out of the class, they would be bound by the settlement[, and] explained the nature of the claims").

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court

1.      Preliminarily approve the Settlement;

2.      Conditionally approve the Settlement Class;

3.      Approve the proposed notice plan;

4.      Enter the Proposed Preliminary Approval Order for notice, opt-out deadlines, objections deadlines, and dates for final approval briefing and hearing.

Dated: June 28, 2017                                        CARELLA, BYRNE, CECCHI,
                                                            OLSTEIN, BRODY & AGNELLO P.C.
                                                            Attorneys for Plaintiffs


                                                            By:___/s/ James E. Cecchi_____
                                                                  JAMES E. CECCHI