James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Oren Giskan
GISKAN SOLOTAROFF
ANDERSON LLP
217 Centre Street, 6th Floor
New York, NY 10013
(212) 847-8315

Thomas Rosenthal
LAW OFFICES - THOMAS S.
ROSENTHAL
45 Main Street #1030
Brooklyn, NY 11201

Edward Hernstadt
HERNSTADT ATLAS PLLC
45 Main Street #1030
Brooklyn, NY 11201

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KYLE CANNON, LEWIS LYONS, and DIANNE LYONS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ASHBURN CORPORATION, WINES 'TIL SOLD OUT (WTSO.COM), and JONATHAN H. NEWMAN, <br><br> Defendants. | Civil Action No. 16-1452(RMB)(AMD) <br><br><br><br> **DECLARATION OF** <br> **OREN GISKAN** |

OREN GISKAN, ESQ., of full age, hereby declares as follows:

1.      I am an attorney licensed to practice in New York, admitted *pro hac vice* in New Jersey for this case, and am a member of the law firm of Giskan Solotaroff & Anderson LLP ("Giskan Solotaroff"). I submit this declaration in support of the application by Class Counsel for an award of attorneys' fees in connection with services rendered in this litigation, as well as the reimbursement of expenses incurred in connection with this action.  I have been

actively involved in the initiation, prosecution, and resolution of this litigation, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my active supervision and participation in all aspects of this case.

2.      Commencing in the Fall of 2015, Class Counsel initiated an investigation into the pricing practices utilized by Defendants on the WTSO.com website (the capital letters are the acronym for Wines 'Til Sold Out or "WTSO"). On average, WTSO.com presented approximately five offers of individual wines on each day of the week Each WTSO offer contained the following information, at a minimum:

a.      The name of the wine;

b.      The "Original Price";

c.      The "Best Web Price (With Shipping)";

d.      "Our Price (Delivered)"; and

e.      The discount off the Original Price, stated in percentage terms.

3.      As is set forth herein, for a full year and one-half, from the start of the investigation until entry into an agreement in principle to resolve the litigation, Class Counsel obtained no discovery from WTSO. During that timeframe, all of the information, including the factual predicate of the inflated "Original Prices," the WTSO advertised offers and the wines at issue in the case, was developed and advanced exclusively through Class Counsel's efforts.

4.      Preliminary research indicated that the brand names or labels of many of the wines offered on the website were never offered for sale in in any other retail establishments, whether brick-and-mortar stores or on other websites. Preliminary searches for those wines on the internet provided little information about the wines other than that they had been offered

on the WTSO.com website. As a consequence, there was a question regarding the basis of the "Original Price."

5.      Class Counsel's protracted investigation continued until the filing of the Complaint (and thereafter – *see infra*), and encompassed:

a.      The identification of current and past WTSO offers through (i) WTSO's emails, including, but not limited to, utilization and review of personal email accounts with WTSO.com email offerings and web.archive.org (and its "wayback machine,") which provides not the current website presentation, but the website's offerings and postings from the past several years), (ii) WTSO.com's Facebook page, which included past offerings, and (iii) WTSO.com's twitter account, which included past offer tweets as well as the current, or most recent, offer tweet;

b.      Investigation of the "Original Price" of each of the offerings, past and present, by researching the WTSO offers and by then researching pricing set forth on "wine-searcher.com" and its "pro" version which, for an annual subscription price, permits searches for the availability of wines at retailers around the country and the world, and the prices, if available, at which the wines at issue were and are offered (this research also encompassed use of the wayback machine for the wine-searcher.com website);

c.      When the wine-searcher.com research provided no information, as often but not always confirmed by the WTSO.com recitation that there was no best web price for the wine, a general, internet based search of each of the wines (its name, vintage, and varietal) to determine its availability other than on the WTSO.com website and its price if otherwise available.

d.      A search of CellarTracker.com, a website in which users with accounts were and are able to maintain accounts with their wine purchases, and with a subscription, the average price paid for the wine.  CellarTracker.com also posts tasting notes and ratings for the wines.  CellarTracker further lists the entities from which the wine was purchased. A duplicate average price with the WTSO "Our Price" often confirmed that WTSO was the only retailer offering the wine, as would information on CellarTracker.com that established that WTSO was the only entity from which the wine was purchased;

e.      Repeated searches of the federal government's (U.S. Department of the Treasury) website devoted to wine labeling for each domestic wine. The Alcohol and Tobacco Tax and Trade Bureau of the Department of the Treasury requires that every domestic wine offered for sale have its label approved by the federal government (to ensure accuracy and compliance with federal regulations) before the wine is offered for sale. The labeling includes on the front of the bottle the brand name but, for purposes relevant to the investigation, further includes something that was not provided on the WTSO.com website, specifically it identifies on the back label the entity which produced, vinted, cellared and/or bottled the wine. With that information, Class Counsel was able to research those particular entities and the wines produced by those entities to determine whether the wine was distributed by the entity only to WTSO.com;

f.      Repeated searches of the federal government's website devoted to trademark      information,      namely,      www.uspto.gov/trademarks-application-

process/search-trademark-database, to determine and to confirm who or what entity controlled the brand names of wines offered for sale by WTSO.com;

g.    Research through online and print wine magazines and journals to ascertain the accuracy of WTSO's "Original Price" representations;

h.    Research into the production and distribution of wines made from grapes grown in California; and

i.    Review and analysis of the WTSO.com website and its historic iterations, including, but not limited to, its links that provided its pricing policies and definitions.

6.    In addition, Class Counsel conducted research into Jonathan H. Newman (a Defendant later dismissed without prejudice) and his privately held company, Newman Wine & Spirits. Many of the wine offerings at issue in this litigation had a connection to Newman and Newman Wine & Spirits. WTSO.com utilized Newman to praise the wines (evaluating the wines, providing information about the wines, assigning high – always 90+ point – scores to the wines) while it concomitantly presented him as a trusted independent critic by touting, *inter alia*, Newman's credentials as Wine Enthusiast's Man of the Year, his years as Chairman of the Pennsylvania Liquor Control Board, and his evaluation of many wines WTSO sources from smaller and boutique wineries For a preponderance of the actionable period in this lawsuit, Class Counsel's further research of the federal government's trademark website established that Newman or his company held the trademarks on many of the labels or wine brands for sale exclusively on the WTSO.com website.

7.      The initial research identified a multitude of labels, brands and wines about which there was no information concerning any original price other than the "Our Price" stated on the WTSO.com website.

8.      In addition to the wines that appeared to be created exclusively for WTSO because they were unavailable anywhere other than on the WTSO.com website, Class Counsel also conducted extensive research into WTSO-advertised offers that were available elsewhere, by other retailers or by the winery itself, to determine the veracity of the pricing references by WTSO. Based on that research it appeared that the "Original Prices" on certain wines were inflated.

9.      After researching the causes of action, and based on its extensive factual investigation, Class Counsel prepared and filed the Complaint in March 2016.

10.      Defendants vigorously defended the litigation from its inception. Defendants Ashburn and WTSO served extensive pre-motion letters as a precursor to a motion to dismiss, and Newman's counsel served Rule 11 sanctions letters. Over the next two months, Class Counsel expended substantial time in responding both (a) initially to WTSO's and Newman's letters, and (b) subsequently to WTSO's motion to dismiss the Complaint, which was served and filed in April 2016 and fully briefed and submitted by June 2016. Class Counsel's work in opposing WTSO's motion to dismiss encompassed extensive legal research into both statutory and case law, review of the facts Class Counsel had gathered in preparing the Complaint, and the drafting of the opposition papers. After careful consideration of, and significant research into, the letters exchanged with Newman's counsel, Class Counsel determined in May 2016 to dismiss Newman as a Defendant without prejudice and with a tolling agreement in place, as the Complaint allegations stood firmly against the remaining Defendants.

11.    Pending the decision from the Court on WTSO's motion to dismiss, which was issued in December 2016, Class Counsel continued its investigation, gathering further information concerning WTSO's pricing practices as well as reviewed and researched new wines offered on the WTSO.com website that had not been offered to purchasers prior to institution of the lawsuit.

12.    At the beginning of November 2016, WTSO amended its website and definitions to more accurately convey its pricing rubric. WTSO replaced its "Original Price" designation with "Comparable Price," and entered its definition onto the website: "'Comparable Price' means the price at which the same or a similar wine with the same primary grape varietal and appellation or sub-appellation has been offered for sale to consumers directly by a producing winery or through retailers."

13.    Following the Court's December 2016 denial, in significant part, of WTSO's motion to dismiss, Class Counsel continued its investigation of WTSO's offers and compiled an extensive list of the wines in issue. All of this was accomplished without any discovery from Defendants.

14.    Soon thereafter, in January 2017, Class Counsel and WTSO's counsel commenced informal discussions regarding WTSO's factual defenses and a possible resolution of this Action.

15.    Class Counsel subsequently provided WTSO counsel with revised and even more comprehensive lists of wines at issue.

16.    Counsel for the parties agreed to mediate the lawsuit in an effort to reach a settlement. At the same time, and mindful of their deadline to amend the complaint, Class Counsel was drafting amendments to the Complaint to update the factual predicate that had

occurred since the March 2016 filing of the original Complaint (including the results of the post-Complaint investigation by Class Counsel), as well as to address issues raised by the Court in its Decision and Order on WTSO's motion to dismiss, including, for example, the purchase by the named Plaintiffs of inflated price wines as well as the wines only sold by WTSO. That drafting continued as the parties entered into the more serious stages of trying to settle the case through mediation and ensuing negotiations.

17.    By February 14, 2017, retired U.S. District Court Judge Dennis M. Cavanaugh agreed to mediate a resolution to this Action. The parties themselves engaged in continuing communications regarding the parameters of a potential settlement as well as which wines were in issue. Class Counsel drafted a mediation statement for submission to Judge Cavanaugh and, on March 24, 2017, counsel for the parties participated in a full day mediation session in Newark, New Jersey. Although progress was made, a resolution was not reached on that day.

18.    From March 24, 2017 until June 28, 2017, the parties continued their protracted discussions for a settlement of the case, encompassing a multitude of emails and conference calls, as well as further input from Judge Cavanaugh. At the same time, given the substantial possibility that the parties would not achieve a resolution, Class Counsel continued to draft the Amended Complaint for service and filing in the event a settlement was not reached.

19.    Following agreement on the terms of the relief to the Class, the parties negotiated and prepared the settlement papers to be filed with the Court, and the declarations and briefing of the issues (in conjunction with legal research) attendant to the joint motion for preliminary approval.

20.     Only after the parties reached agreement on all material terms of the settlement did they commence negotiations regarding Class Representative Service Awards and attorneys' fees and expenses.

21.     Confirmatory discovery took place in Bala Cynwyd, Pennsylvania on June 15, 2017 at which three attorneys representing the Class Members appeared from New York. Class Counsel took confirmatory discovery over several hours from three representatives of WTSO, including its CEO and CFO. Class Counsel confirmed representations made by Defendant during the negotiations and concluded that the Settlement was fair and reasonable, and should be presented to the Court for approval.

22.     Satisfied with the sufficiency and propriety of information obtained during confirmatory discovery, Class Counsel in the following two weeks revised the settlement papers, exchanged drafts among themselves and with opposing counsel, amended and revised the wines to be included on the exhibits accompanying the settlement papers (both the exclusive wines list and the inflated price wines) and, on June 28, 2017, filed with the Court the set of settlement papers seeking preliminary approval.

23.     After the Court set its hearing on the Motion for Preliminary Approval, Class Counsel negotiated with WTSO counsel concerning necessary changes to dates in the settlement papers in connection with notifications to the Class Members.

24.     Following the November 8, 2017 preliminary hearing, at which the Court expressed concerns about certain aspects of the settlement, most notably the notice to be provided to Class Members, the parties negotiated further changes to the terms of the settlement to ensure satisfactory notice to Class Members was achieved, as reflected in the

revised settlement papers and the Court's November 16, 2017 grant of preliminary approval to the settlement.

25.     In the two months since preliminary approval and in the weeks since the December 21, 2017 notice to Class Members, Class Counsel has continued to monitor reactions to the proposed settlement and to field inquiries concerning the proposed settlement and the propriety thereof.

### A.     SUMMARY OF LODESTAR INCURRED BY CLASS COUNSEL

26.     My firm has been involved in every aspect of this litigation, from the initial investigation, through the pleadings and motion practice, to the negotiation of the Settlement before the Court. Annexed hereto as Exhibit 1 is a detailed summary indicating the amount of time expended by the partners, associates, and professional support staff of my firm who were involved in this litigation.

27.     The summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.  Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

28.     Giskan Solotaroff expended a total of 478.6 hours in this litigation from inception until January 12, 2018. The total lodestar reflected in Exhibit 1 for that period is $303,082.75. The time incurred by each attorney and paralegal who worked on this case, and each attorney's and paralegal's billing rate is reflected in this summary. The total hours are necessarily incomplete as much work remains to be done including preparing for and presenting arguments at the final approval hearing. Annexed hereto as Exhibit 2 is my firm's resume.

29.     Annexed hereto as Exhibit 3 is a chart reflecting all reimbursable expenses incurred by this firm in connection with the prosecution of the action. These expenses are reflected in the books and records of my firm, which are kept in the ordinary course and prepared from expense vouchers, check records, and other documents. In total, Giskan Solotaroff incurred $6,808.49 in costs prosecuting this action.

30.     The total number of hours expended by all Class Counsel to date is 1233.5, resulting in a total lodestar of $783,460.75. The fee sought represents a multiplier of 2.17 (once expenses are excluded). This does not account for the work remaining including the preparation of papers in support of Final Approval of the settlement, communications with class members and the claims administrator regarding the settlement, responding to any objections raised by members of the class, and any appeal that may be filed if the settlement is approved.

31.     The total expenses incurred by all Class Counsel for which reimbursement is sought is $9,226.96.

32.     Throughout this action, I have sought to reach consensus with my co-counsel to manage the administration and work division in this case in a systematic and efficient manner, coordinating work assignments through conference calls, working to avoid duplication of efforts or unnecessary work undertaken by any of the counsel for the Class in this case, and ensuring that the skills and talents of counsel were put to use in an efficient and effective manner that maximized what each firm and attorney could contribute in a non-redundant way.

33.     Class Counsel negotiated, and the Defendants had agreed to pay, a fixed sum of $1.8 million in attorneys' fees and expenses, subject to the Court's approval. Following the

hearing on Preliminary Approval, Class Counsel agreed to reduce the amount of fees they will seek to $1.7 million to cover the costs of the additional Postcard notice requested by the Court.

34.     This award of attorneys' fees and costs is completely separate and apart from the Class Settlement, and the relief to the Class will not be reduced as a result of these payments.

35.     The settlement achieved in this litigation is the product of the initiative, investigation, and hard work of skilled counsel. Because of Class Counsel's efforts, assuming the Court approves the settlement, the Class will receive significant benefits.

36.     The skill and efficiency of the attorneys involved is best "measured by the results achieved, the difficulty faced, the speed and efficiency of the recovery, the standing, experience, and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance of and quality of opposing counsel." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)). Here, Class Counsel overcame several obstacles, all while facing preeminent defense counsel, to achieve this Settlement. I respectfully submit that the substantial benefits provided by the Settlement would not have been possible without the combined efforts, skill and efficiency of the attorneys and professionals involved in prosecuting this case. The work of those attorneys is set forth in detail in their separate affidavits.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Oren Giskan

Dated: January 16, 2018

12

Exhibit 1

| **Attorney: (A)**<br>**Paralegal: (P)** | **Rate** | **Total Hours** | **LodeStar** |
|---|---|---|---|
| Oren Giskan<br>(A) | $720 | 384.2 | $276,624 |
| Iliana Konidaris<br>(A) | $400 | 26.1 | $10,440 |
| Aliaksandra<br>Ramanenka<br>(A) | $325 | 24.1 | $7832.50 |
| Laura Thurber<br>(P) | $185 | 44.25 | $8,186.25 |
| **TOTAL** | | **478.65** | **$303,082.75** |

Exhibit 2

GISKAN SOLOTAROFF & ANDERSON LLP

<u>Firm Biography</u>

Giskan Solotaroff & Anderson LLP is a firm with significant experience in complex litigation involving consumer fraud, antitrust, and employment discrimination litigation in state and federal courts, on behalf of plaintiffs and often involving class actions.

OREN GISKAN is admitted to practice in the states of New York (1993) and Illinois (1990). He received his law degree from the University of Pennsylvania in 1990 and his Bachelor of Arts from the University of Chicago in 1986.

Mr. Giskan served as lead class counsel in *In re Check Loan Litigation*, N.D. Cal. 09-md-02032 ($100 million settlement of claims related to increase of minimum monthly credit card payments); *Cohen v. JP Morgan Chase & Co. and JP Morgan Chase Bank*, E.D.N.Y. 04-cv-4098 (settlement of deceptive claims related to charging of mortgage fee resulting in a recovery of 100% of damages for class members); *Sebrow v. Allstate Insurance Company*, E.D. N.Y., CV-07-3929 (settlement of deceptive practice claims regarding non-renewal of homeowners insurance policies), *Education Station v. Yellow Book USA*, Superior Court of New Jersey ($70 million settlement of false advertising claims), *Danielson v. Rockford Memorial Hospital*, Circuit Court of Winnebago County Illinois, No. 01 L 139 (settlement of patient billing claims under the Illinois Consumer Fraud Act), and *Truschel v. Juno Online Inc.*, Supreme Court of the State of New York, New York County, No. 01/602486 (settlement of consumer protection claims regarding failure to provide Internet service). Prior to forming the firm of Giskan & Solotaroff in October 2002, Mr. Giskan worked for the firms of Prongay & Borderud, the Law Offices of James V. Bashian, P.C. and Zwerling, Schachter & Zwerling, LLP, in New York, New York where he was actively involved as lead counsel for plaintiffs in many securities class action lawsuits including: *Hal Bloomberg Trust v. Gencor Industries, Inc.*, M.D. Fla., 99-106- Civ-Orl; *Kaplan v. Prins Recycling Corp.*, D.N.J., 96 Civ. 2444; *In re Lady Luck Gaming*

*Corporation Securities Litigation*, D. Nev., CV-S-95-266-LDG (RLH); *In re American Pacific Securities Litigation*, D. Nev., CV-S-93-00576-PMP; and *In re Foodmaker/Jack-in-the-Box Securities Litigation*, W.D. Wash., No. C93-517WD. He also actively participated as one of the lead counsel in coordinated nationwide class actions against America Online Inc. regarding its deceptive billing practices. From 1990-92, Mr. Giskan was an associate with Jenner & Block in Chicago, Illinois where he focused on securities and general commercial litigation.

From 1990-92, Mr. Giskan was an associate with Jenner & Block in Chicago, Illinois where he focused on securities and general commercial litigation.

**JASON L. SOLOTAROFF** is admitted to practice in the State of New York.  He is a 1990 graduate of Columbia Law School where he was an Editor of the Columbia Law Review and a Harlan Fiske Stone Scholar.  He graduated from the Johns Hopkins University with General Honors.

Mr. Solotaroff clerked for the Hon. Eugene H. Nickerson, United States District Court for the Eastern District of New York.  Following the clerkship, Mr. Solotaroff was a Staff Attorney at the Legal Aid Society, Criminal Defense Division from 1991 to 1993.  In 1993, he joined the Society=s Federal Defender Division.  As a federal defender, Mr. Solotaroff represented clients in a wide variety of matters including complex white-collar cases.  Of the nine clients he represented in criminal trials, six were acquitted and one received a partial acquittal.

Mr. Solotaroff entered private practice in 1997.  Since 1997, he has devoted a substantial part of his practice to the representation of plaintiffs in class action matters. Among the cases in which he has had substantial responsibility are consumer class actions against Juno Online Inc., Lincoln Security Life Insurance of New York, Verizon Communications, American Express and antitrust class actions against Abbott Laboratories,

Bristol-Myers Squibb and Astrazeneca Inc.   He also represents individuals in employment discrimination and criminal defense matters.

**CATHERINE E. ANDERSON** is admitted to practice in the States of New York and New Jersey.   She received her law degree from New York University School of Law in 1995, where she was editor of the Journal of International Law and Politics.   She graduated *magna cum laude* from Colgate University in 1992, where she was elected Phi Beta Kappa. Ms. Anderson has specialized in consumer class actions and employment law.

Ms. Anderson recently has represented several lead plaintiffs in class actions challenging the force placement of insurance on homeowners, including *Hall, et al v. Bank of America, N.A.*, 12-cv-22700 (FAM)(SD FLA)($228 million nationwide settlement); *Montoya v. PNC Bank, N.A., 1*:14-cv-20474 (JG)(SD FLA)($32.3 million nationwide settlement); and *Wilson v. Everbank, et al.*, 1:14-cv-22264(BB)(SD FLA) ($8.75 million nationwide settlement).

Ms. Anderson also has served as lead counsel in the following notable class and collective actions which have resulted in significant settlements: *Cohen v. JP Morgan Chase & Co. and JP Morgan Chase Bank*, 04-cv-4098 (ILG) (E.D.N.Y.)($20 million settlement on behalf of homeowners); *Kent v. Hewlett-Packard Co.*, C-09-05341 (JF)(N.D. CA)(settlement valued at over $2 million on behalf of consumer who purchased defective computers); *Patel,et al v. Baluchis, et al* 08-cv-9985 (RJS)(S.D.N.Y.) ($880,000 settlement on behalf of restaurant workers for wage and hour claims); *Sebrow, et al. v. Allstate Insurance Co., et al.* 07 CV 3929 (FB)(RLM) (E.D.N.Y.) (settlement providing 100% relief to over 54,000 homeowners); *Russo v. WholeArts Foundation, Inc., et al*, Index No. 603037/03 (KM) (New York Supreme Court (providing 100% payment of outstanding bills on behalf of members of defunct health plan).

Prior to joining Giskan Solotaroff & Anderson LLP, Ms. Anderson was associated with the firm of Wolf Popper LLP, where she served as lead or co-lead counsel in the following class actions which obtained a substantial recovery for the class: *Garcia v. General Motors Corp.*, Docket No. L-4394-95, Superior Court of New Jersey, Bergen County ($19.5 million settlement ); *Whipple v. Happy Kids, Inc.*, Index No. 99-603371, IAS Part 10, Supreme Court of the State of New York, New York County (obtaining a settlement providing, among other things, an increase of $0.50 per share on behalf of the Happy Kids public shareholders in a revised buyout transaction); *In re Segue Software, Inc., Sec. Litig.*, C.A. 99-10891-RGS, United States District Court, District of Massachusetts (obtaining a cash settlement of $1.25 million on behalf of a class of all persons who purchased the common stock of Segue Software, Inc. during the period July 14, 1998 through April 9, 1999); *Jonas v. Aspec Technology, Inc.*, Lead Case No. CV775037, Superior Court of the State of California ($13 million cash settlement plus a stock component of 1.75 million shares); *In re Ugly Duckling Corp. Shareholders Derivative and Class Action*, Consolidated C.A. No. 18843, Delaware Court of Chancery, New Castle County (obtaining an increase from $2.51 per share to $3.53 per share cash in going private transaction on behalf of a class comprised of the Company=s minority shareholders, resulting in an aggregate cash benefit of more than $4.7 million).

**ALIAKSANDRA RAMANENKA** is an associate at Giskan Solotaroff & Anderson LLP, and represents plaintiffs in employment and civil rights cases and consumer class actions, and corporations and individuals in commercial litigation. Ms. Ramanenka is a graduate of the City University of New York School of Law and is admitted to practice in the sates of New York and New Jersey.

Exhibit 3

**Giskan Solotaroff & Anderson LLP**
**Cannon v. Ashburn Expenses**

| Category | Total | |
|---|---|---|
| Filing Fees | $ | 220.67 |
| Travel | $ | 666.70 |
| Legal Research | $ | 507.82 |
| Mediation Fees | $ | 3,250.00 |
| Expert Fees | $ | 2,000.00 |
| Printing/Shipping | $ | 163.30 |
| **TOTAL** | $ | **6,808.49** |