UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**FINEMAN KREKSTEIN & HARRIS, P.C.**
*A Pennsylvania Professional Corporation*
BY      RICHARD J. PERR, ESQUIRE
           MONICA M. LITTMAN, ESQUIRE
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA  19103-1628
(v) 215-893-9300; (f) 215-893-8719
rperr@finemanlawfirm.com; mlittman@finemanlawfirm.com

| | |
|---|---|
| KYLE CANNON, LEWIS LYONS, AND DIANNE LYONS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> ASHBURN CORPORATION, *et al.*, <br><br> Defendants. | Civil Action No. 16-1452 (RMB)(AMD) <br><br><br><br><br><br><br> **OBJECTION OF DEREK HANSEN, VYTAURAS SASNAUSKAS, AND RYAN RUSSELL TO SETTLEMENT APPROVAL** |

{01380176;v2}

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ 1

**ARGUMENT** ..................................................................................................................... 2

   1.   Objectors Derek Hansen, Vytauras Sasnauskas and Ryan Russell are class members and intend to appear through counsel at the fairness hearing set for March 19, 2018. ...................... 2

   2.   The standard of review in the Third Circuit of class action settlements is whether the class relief is fair, reasonable and adequate. ...................................................................................... 3

   3.   The proposed settlement is not fair, reasonable and adequate, as it is merely and exclusively a coupon based settlement under CAFA that does not immediately convey a direct benefit to the Class. ................................................................................................................ 5

   4.   Any unused portion of the $10.8 Million settlement amount will revert back to Defendants which is generally disfavored in the Third Circuit and as it rewards defendants, not the class, and does little, if anything, to deter future similar unlawful conduct. ....................................... 8

   5.   A proposed nationwide settlement class cannot be certified until differences in state law are properly analyzed and there is no indication in the record that such an analysis was completed and submitted to the court by the settling parties. ..................................................... 9

   6.   While on its face the class counsel attorneys' fee award seem reasonable, approximately ten percent of the $10.8 Million settlement, they are unreasonable given that the actual benefit to the class is not determinable until credits are redeemed. ...................................................... 11

   7.   The relatively simple modifications and relief requested by Objectors will transform the proposed settlement from being an unacceptable outlier in the Third Circuit to one which is fair, reasonable and adequate with far greater benefits to the class. ........................................ 14

**CONCLUSION** ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 10

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)...................................................... 10, 11

*Dewey v. Volkswagen of Am.,* 909 F. Supp. 2d 373 (D.N.J. 2012)................................................. 14

*Figueroa v. Sharper Image Corp.*, 517 F. Supp.2d 1292 (S.D. Fla 2007) ................................ 7, 9

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975) ........................................................................... 3, 4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................................... 10

*In re Baby Products Antitrust Litig,* 708 F.3d 163 (3d Cir.2013)............................................... 5, 8

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ................................................................................................ 3, 4, 7, 8, 11, 13

*In re HP Inkjet Printer Litigation,* 716 F.3d 1173 (9th Cir.2013). ............................................ 6, 7

*In re Hyundai and Kia Fuel Economy Litig.,* No. 15-65014 (9th Cir. Jan. 23, 2018) ................. 10

*In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 2010 WL 5127661 (3d Cir. Dec. 16, 2010). 4, 5

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998).... ....................................................................................................................................... 3, 4, 12

*In re Prudential Ins. Co. of Am. Sales Practice Litig*., 103 F. App'x 695 (3d Cir. 2004)............. 14

*In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir.2004).............................................. 4

*Martina v. L.A. Fitness Int'l, LLC*, No. 2:12-CV-2063 WHW, 2013 WL 5567157 (D.N.J. Oct. 8, 2013) ................................................................................................................................ 6

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................ 11

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ....................................... 11

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa. 2011) ............................................. 5, 7

*Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F.Supp.2d 561 (E.D.Pa.2001) .................. 4

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646 (7th Cir. 2006)....................... 6, 7

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................................... 11

*Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518 (1st Cir.1991) ............................. 12

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.) .................................................... 10

## Other Authorities

Andrew Adams, *Wines Till Sold Out Now Topping $50 Million in Sales*, Wines and Vines (May

2012), https://www.winesandvines.com/columns/section/21/article/99826/Wines-Till-Sold-

Out-Now-Topping-50-Million-in-Sales..................................................................................... 1

28 U.S.C. § 1712......................................................................................................................... 7

Panel 3: Clear Notices, Claims Administration, and Market Makers, 18 Geo. J. Legal Ethics 1223,

(2005) .................................................................................................................................. 9, 13

## Rules

Rule 23(a)...................................................................................................................................... 11

Rule 23(b)(3)......................................................................................................................... 10, 11, 12

**INTRODUCTION**

The settling parties would have this Court believe the proposed settlement fairly, adequately and reasonably compensates the thousands of wine connoisseurs across the country that were deceived by the unscrupulous sales practices of defendant. In reality, the consumers have nothing to celebrate. The one popping the cork will be Wines 'Til Sold Out ("WTSO"), whose coupon-payout will result in a sales bonanza for the online retailer. Meanwhile, the class members will receive the contrived "benefit" of being forced to shop with the very company that mislead them in order to receive any "award" while at the same time releasing their rather significant claims against them. It's a win-win for WTSO and a lose-lose for the consumer.

Defendants lied to their customers. Every day on the front page of WTSO's website is a new wine for purchase, advertised between 30-70% off from the "Original Price" listed. Yet this discount was no discount at all – in fact, the "Original Price" was inflated to the point that the "discount" presented was merely an opportunity to buy the wine at market price. These wines, which were available elsewhere at a lower original price, were represented to consumers as discounted at a much higher rate than they would have been had the "Original Price" been accurately conveyed. Meanwhile, WTSO reaped the benefits, topping $50 million in sales for year 2011. Andrew Adams, *Wines Till Sold Out Now Topping $50 Million in Sales*, Wines and Vines (May 2012), https://www.winesandvines.com/columns/section/21/article/99826/Wines-Till-Sold-Out-Now-Topping-50-Million-in-Sales.

It would be unjust to consumers to approve the settlement, class certification, and attorney fee award in their current form. Credit and coupon-based class settlements like this are disfavored by the Class Action Fairness Act ("CAFA") and are heavily scrutinized in the Third Circuit. This settlement does not provide the opportunity for significant relief to a large segment of the class

while forcing the deceived to continue business with the deceiver, and does nothing to deter the wrongdoers from continuing unfair business practices in the future. It incentives them.

## ARGUMENT

**1. Objectors Derek Hansen, Vytauras Sasnauskas and Ryan Russell are class members and intend to appear through counsel at the fairness hearing set for March 19, 2018.**

Objector Derek Hansen currently resides at 350 Glasgow Drive, Highland Heights, Ohio, 44143 with a phone number of (330) 618-0453. Declaration of Derek Hansen, attached hereto as Exhibit 1, at ¶¶ 2-3. Throughout the class period of March 15, 2010 to November 1, 2016, Objector Hansen made twelve (12) purchases from WTSO totaling seven-hundred forty-nine and 52/100 dollars ($749.52). Exhibit 1 at ¶ 4 and Exhibit A. On December 28, 2017, Objector Hansen submitted a verification form online via the web address provided by the settling parties at https://kccsecure.com/winesettlement/Claimaint. Exhibit 1 at ¶ 7.

Objector Vytauras Sasnauskas currently resides at 11805 Wellesley Lane, Chardon, Ohio 44024 with a phone number of (216) 501-1666. Declaration of Vytauras Sasnauskas, attached hereto as Exhibit 2, at ¶¶ 2-3. Throughout the class period of March 15, 2010 to November 1, 2016, Objector Sasnauskas made one-hundred and seventy-three (173) purchases from WTSO totaling eleven thousand, three-hundred ninety and 03/100 dollars ($11,390.03). Exhibit 2 at ¶ 4 and Exhibit A. On December 26, 2017, Objector Sasnauskas submitted a verification form online via the web address provided by the settling parties at https://kccsecure.com/winesettlement/Claimaint. Exhibit 2 at ¶ 7.

Objector Ryan Russell currently resides at 593 Lander Drive, Highland Heights, Ohio 44143 with a phone number of (216) 573-0357. Declaration of Ryan Russell, attached hereto as Exhibit 3, at ¶¶ 2-3. Throughout the class period of March 15, 2010 to November 1, 2016, Objector

Russell made ten (10) purchases from WTSO totaling four-hundred sixty-three and 66/100 dollars ($463.66). Exhibit 3 at ¶ 4 and Exhibit A.  On December 22, 2017, Objector Russell submitted a verification form online via the web address provided by the settling parties at https://kccsecure.com/winesettlement/Claimaint. Exhibit 3 at ¶ 7.

Objectors Hansen, Sasnauskas, and Russell are represented by attorneys Brendon Friesen and Kenneth Smith of Mansour Gavin LPA, and Richard J. Perr and Monica M. Littman of Fineman Krekstein & Harris, P.C., and will appear at the Fairness Hearing scheduled for March 19, 2018. Counsel reserves the right to make use of documents reflected on the docket, and further reserves the right to cross-examine witnesses who may testify at the hearing in support of final approval.

### 2.    The standard of review in the Third Circuit of class action settlements is whether the class relief is fair, reasonable and adequate.

The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court. *Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir.1975). However, "a class action cannot be settled without the approval of the court and a determination that the proposed settlement is 'fair, reasonable and adequate.'" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998), quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The court plays a critical role in protecting the interests of absentee class members:

> Despite the potential benefits of class actions, there remains an overarching concern—that absentees' interests are being resolved and quite possibly bound by the operation of res judicata even though most of the plaintiffs are not the real parties to the suit. The protection of the absentees' due process rights depends in part on the extent the named plaintiffs are adequately interested to monitor the attorneys (who are, of course, presumed motivated to achieve maximum results by the prospect of substantial fees), and also on the extent that the class representatives have interests that are sufficiently aligned with the absentees to assure that the monitoring serves the interests of the class as a whole. In addition, the court plays

the important role of protector of the absentees' interests, <u>in a sort of fiduciary capacity</u>, by approving appropriate representative plaintiffs and class counsel.

*In re General Motors*, 55 F. 3d at 784 (emphasis added).

The role of the court takes on heightened importance where "settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously," as the court must apply an "<u>even more rigorous, heightened standard</u>" to protect absentee class members. *In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 349–50, 2010 WL 5127661, at *12 (3d Cir. Dec. 16, 2010) (internal marks omitted) (emphasis added), quoting *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 534 (3d Cir.2004).

In determining whether a settlement is fair, reasonable, and adequate as Rule 23(e) requires, the Third Circuit in *Girsh v. Jepson* has "identified certain factors which district courts may employ in informing their discretion before granting final approval to the class action settlement." *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F.Supp.2d 561, 571 (E.D.Pa.2001), citing *Girsh,* 521 F.2d at 157. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157.

The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement. *In re General Motors,* 55 F.3d at 785.

In *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 323, the Third Circuit held that following a "sea-change in the nature of class actions" after *Girsh* was

decided, it may be helpful to expand the *Girsh* factors to include, when appropriate, the following non-exclusive factors:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*See also In re Pet Food Prod.,* 629 F.3d at 350.

Although *Girsh* and *Prudential* guide the analysis, District Courts must caution against rigidly applying the *Girsh* and *Prudential* factors when evaluating the ultimate fairness of a class settlement:

> While many of the factors appear to weigh in favor of approval on the surface, they are not truly probative of the settlement's ultimate fairness. At least in a consumer case like the one before the Court, analyzing each factor in rote fashion makes the settlement seem fairer than it is. In other words, applying *Girsh/ Prudential* to evaluate the fairness of a consumer case settlement may result in a mirage: a settlement that is not as favorable as it appears.

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 251 (E.D. Pa. 2011).

Expanding upon this view is the Third Circuit's 2013 decision in *In re Baby Products Antitrust Litig,* 708 F.3d 163, 174 (3d Cir.2013), which recently added that another important consideration is "the degree of direct benefit provided to the class," including "the size of the individual awards compared to claimants' estimated damages." *Id.*

   **3.   The proposed settlement is not fair, reasonable and adequate, as it is merely and exclusively a coupon based settlement under CAFA that does not immediately convey a direct benefit to the Class.**

The proposed relief provided to class members in this settlement is credit towards future purchases of wine through WTSO's website. Credit toward a product offered by the class-action defendant is a coupon for purposes of CAFA. *Martina v. L.A. Fitness Int'l, LLC*, No. 2:12-CV-2063 WHW, 2013 WL 5567157, at *5 (D.N.J. Oct. 8, 2013) ("The $100 credit towards a new membership is clearly a discount and thus a "coupon" even under Plaintiffs' own proffered definition: It is a credit which requires class members to spend money in order to realize the benefit.").

For certain bottles of wine purchased during the applicable class period of March 15, 2010 to November 1, 2016, class members will receive a credit ranging from $0.20 to $2.25 per bottle of wine purchased. The parties have estimated the total value of the credits as equaling approximately ten million eight hundred thousand dollars ($10,800,000). Critically, there is no option for class members to convert their credit to cash, unless WTSO is unable to ship to the class member's home or business address within the redemption period of one (1) year.

These "coupon" based class settlements are treated with heightened scrutiny, and Congress has explicitly singled out coupon settlements in CAFA:

> The Class Action Fairness Act instructs district courts to apply additional scrutiny to class settlements consisting in whole or in part of "coupons." 28 U.S.C. § 1712. As the legislative history reveals, Congress included a "coupon settlement" provision in CAFA to address the situations in which the interests of class members and class counsel diverge: namely, the perverse incentive of class counsel to "negotiate settlements under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorney's fees."

*Martina*, 2013 WL 5567157 at *4, citing *In re HP Inkjet Printer Litigation,* 716 F.3d 1173, 1178 (9th Cir.2013).

Not only has Congress expressed concern about the validity of coupon-based settlements, but so, too, have numerous Circuit and District Courts. *See, e.g., Synfuel Techs., Inc. v. DHL*

*Express (USA), Inc.,* 463 F.3d 646, 653–55 (7th Cir. 2006) ("we note that in [CAFA] Congress required heightened judicial scrutiny of coupon-based settlements based on its concern that in many cases counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." (internal quotations omitted)); *In re HP Inkjet Printer Litigation,* 716 F.3d 1173 at 1178-79 (9th Cir. 2013);  *Figueroa v. Sharper Image Corp.*, 517 F. Supp.2d 1292, 1302 (S.D. Fla 2007) ("[coupons] often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do business with the defendant in order to receive compensation."); *see also In re General Motors,* 55 F.3d at 806–07 (3rd Cir. 1995).

Concerns about the fairness of coupon-based settlements are typically analyzed within the context of the final two *Girsh* factors: 8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See, e.g., Reibstein*, 761 F. Supp.2d at 255-56.

Here, it is highly likely that numerous class members will not use their credits whatsoever. Some may not want to do business with WTSO after feeling defrauded by the company, as outlined in the allegations made by the class representatives in their Complaint. Others may simply not purchase wine within the one (1) year redemptive period.

Indeed, unlike other cases where coupon-based settlements have been upheld, here there is an expiration date on using the credits; the credits can go towards only one product (wine) and not a variety of goods; and credits are not freely transferrable, since each class member receives a "non-transferrable individualized code." *See* Settlement Agreement, Section IV(G); *contrast* with *Reibstein*, 761 F. Supp.2d at 255-56 ("In this case, the gift cards have actual cash value, are to be

mailed to a class of (mostly) regular customers, have no expiration date, are freely transferrable, and can be used for literally thousands of products for which ordinary consumers, including class members, have need. . . Under these circumstances, the gift cards are more like 'cash' than 'coupons.'").

Other class members may not be able to receive a benefit due to state laws on shipping alcohol. In these cases, the Settlement Agreement has carved out an exception: these class members can request WTSO within 60 days after the settlement is in effect, and they can receive 50% of the amount of their received credits in cash. *See* Settlement Agreement, Section IV(J). "One sign that a settlement may not be fair is that some segments of the class are treated differently from others." *In re General Motors,* 55 F.3d at 808. These class members must sacrifice half the value of their settlement award due to factors outside their control, undercutting any argument that this settlement is fair for all class members.

4.  **Any unused portion of the $10.8 Million settlement amount will revert back to Defendants which is generally disfavored in the Third Circuit and as it rewards defendants, not the class, and does little, if anything, to deter future similar unlawful conduct.**

Under the terms of the Settlement Agreement, if class members do not utilize their credits within the one (1) year redemptive period, they will receive no tangible benefit and Defendants, presumably, will not incur any cost. Indeed, the Settlement Agreement is silent as to what happens to unclaimed or unredeemed credits. The natural conclusion is that the value given to class members in the form of the credits will revert back to Defendants.

As held in the Third Circuit, "[r]eversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement." *In re Baby Prod. Antitrust Litig.,* 708 F.3d 163, 172 (3d Cir. 2013).

Moreover, the settling parties have presented no evidence as to the cost of this settlement to Defendants. There is no evidence of the likely redemptive rate of the credits distributed in the settlement, nor is there information regarding the cost to Defendants of honoring the vouchers. This is particularly concerning given the extremely low average coupon redemption rate of two percent (2%). *See* Panel 3: Clear Notices, Claims Administration, and Market Makers, 18 Geo. J. Legal Ethics 1223, 1235 (2005) ("Coupon redemption is low generally. In other words, there are billions and billions of dollars of coupons that are issued by corporations as marketing tools. The average redemption rate for those is around two percent. So it's no wonder that class action coupon redemption rates inherently are very low.").

In sum, there is little to no evidence that Defendants will be deterred whatsoever from the alleged wrongful conduct, or that there is any cost at all to defendants in paying out the settlement to the class members. Instead, Defendants can expect an uptick in business when class members receive their credits. Such a settlement highlights the problems inherent with coupon-based class settlements. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp.2d at 1302 ("[coupons] often do not provide meaningful compensation to class members; <u>they often fail to disgorge ill-gotten gains from the defendant</u>; and they often require class members to do business with the defendant in order to receive compensation.")(emphasis added).

**5. A proposed nationwide settlement class cannot be certified until differences in state law are properly analyzed and there is no indication in the record that such an analysis was completed and submitted to the court by the settling parties.**

Plaintiffs in this matter have brought an action on behalf of consumers across the country who made purchases from WTSO during the relevant period. As such, the proposed class is a nationwide class. The parties also seek certification for settlement purposes under R. 23(b)(3).

"Where plaintiffs bring a nationwide class action under CAFA and invoke Rule 23(b)(3), a court must consider the impact of potentially varying state laws, because '[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance.'" *In re Hyundai and Kia Fuel Economy Litig.,* No. 15-65014 (9th Cir. Jan. 23, 2018), *citing Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). Indeed, the predominance inquiry under Rule 23(b)(3) is far more demanding that Rule 23(a)'s commonality requirement, and commonality alone cannot fulfill the requirements under Rule 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

In *In re Hyundai*, *supra*, at p. 32, the 9th Circuit recently analyzed the requirements of Rule 23(b)(3) in the context of class approval for a nationwide settlement:

> Because the Rule 23(b)(3) predominance inquiry focuses on "questions that preexist any settlement," namely, "the legal or factual questions that qualify each class member's case as a genuine controversy," *Amchem*, 521 U.S. at 623, a district court may not relax its "rigorous" predominance inquiry when it considers certification of a settlement class, *Zinser*, 253 F.3d at 1186. To be sure, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citation omitted). But "other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.* "Heightened" attention is necessary in part because a court asked to certify a settlement class "will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

citing *Amchem*, 521 U.S.591 and *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (emphasis added).

The 9th Circuit went on to overturn the District Court's granting of class certification for settlement purposes because it failed to take into account variations in state law for the nationwide settlement:

> [T]he court erred by failing to make a final ruling as to whether the material variations in state law defeated predominance under Rule 23(b)(3). Because "variations in state law may swamp any common issues and defeat predominance," *Castano*, 84 F.3d at 741, a court must analyze whether "the consumer-protection laws of the affected States vary in material ways," *Pilgrim*, 660 F.3d at 947, even if the court ultimately determines that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues," *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).
>
> * * *
>
> Finally, the district court erred in holding that it could avoid considering the potential applicability of the laws of multiple states on the ground that the proposed settlement was fair. "[A] fairness hearing under Rule 23(e) is no substitute for rigorous adherence to those provisions of the Rule designed to protect absentees[.]" *Ortiz*, 527 U.S. at 849.

*Id.* at pp. 50, 52, citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036; and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

Here, there is not an indication in the Order Preliminarily Certifying Settlement Class, Granting Preliminary Approval of Settlement, and Approving Class Notice that consideration of the potential variation in state laws was taken into account. Such analysis could defeat the Rule 23(b)(3) predominance requirement in this nationwide settlement. As such, class approval for the proposed settlement is not appropriate until such an analysis is conducted.

   **6. While on its face the class counsel attorneys' fee award seem reasonable, approximately ten percent of the $10.8 Million settlement, they are unreasonable given that the actual benefit to the class is not determinable until credits are redeemed.**

It is axiomatic that in all class action settlement, "a thorough judicial review of fee applications is required. . ." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir. 1995). When the parties negotiate a settlement, "the court must always be mindful of the 'danger ... that the lawyers might urge a class settlement at a low figure

or on a less-than-optimal basis in exchange for red-carpet treatment for fees.'" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998), citing *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir.1991).

In Class Counsel's Brief in Support of Application for Award of Attorneys' Fees and Reimbursement of Expenses, class counsel indicates that the proposed one-million, seven-hundred thousand ($1,700,000) attorney fee award and award of expenses was negotiated separately from the class award, the product of arm's-length negotiations. (Doc. #47, p. 7). Class counsel argues the proposed fee award is reasonable because: (1) class counsel obtained a substantial benefit for settlement class members; (2) class counsel brought the matter to efficient conclusion; (3) class counsel undertook a risk of non-payment; and (4) class counsel devoted significant time to this case. (Doc. #47, pp. 7-11). Class counsel also indicates that a lodestar cross-check supports the reasonableness of their fee award. (Doc. #47, pp. 11-12).

Objectors have no reason to doubt class counsel worked to bring the matter to conclusion, undertook risks, and devoted substantial time to this case. However, given that class counsel has admitted the lodestar method was utilized as a cross-check to determine reasonableness, this can only mean that the fees were negotiated under a percentage-of-recovery method. *See In re Prudential¸* 148 F.3d at 333 ("There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method . . . [after utilizing one method] it is sensible for a court to use a second method of fee approval to cross check its initial fee calculation." (internal citations omitted)).

The attorney-fee award is therefore based on a percentage of the approximated $10.8 million in estimated coupon credit to the class. This is utilized in class counsel's Brief in Support

as the estimated benefit to the class. (Doc. # 47, p. 7). Class counsel also indicates the class is getting the instant benefit of injunctive relief. (Doc. # 47, pp. 7-8).

However, for the reasons outlined above, this $10.8 million dollar figure is not an accurate representation of the actual value the class will receive. These credits may hold little to no value to a majority of class members who do not want to continue business with WTSO. Many credits will not be redeemed or utilized within the one-year redemptive period. The Settlement Agreement is silent as to what happens to unclaimed or unredeemed credits, and presumably the "benefit" will revert back to WTSO for all unused credits. Given the average coupon redemptive rate of two percent (2%), the class as a whole will likely receive a meagre benefit. *See* Panel 3: Clear Notices, Claims Administration, and Market Makers, 18 Geo. J. Legal Ethics 1223, 1235 (2005) ("Coupon redemption is low generally. In other words, there are billions and billions of dollars of coupons that are issued by corporations as marketing tools. The average redemption rate for those is around two percent. So it's no wonder that class action coupon redemption rates inherently are very low.").

The only way to determine the <u>actual</u> benefit to the class under the current Settlement Agreement is to wait until the end of the one-year redemptive period and determine how much value in credits was actually redeemed. As it currently stands, the actual value to the class is too speculative to grant the requested attorney fee award. *See In re General Motors,* 55 F.3d at 822 (reversing the district court's approval of the settlement agreement and attorney fee award and holding that "[a]t the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees. The problem, however, is not simple, <u>for arguably, any settlement based on the award of certificates would provide too speculative a value on which to base a fee award</u>." (emphasis added)).

**7. The relatively simple modifications and relief requested by Objectors will transform the proposed settlement from being an unacceptable outlier in the Third Circuit to one which is fair, reasonable and adequate with far greater benefits to the class.**

Objectors Hansen, Sasnauskas, and Russell request this Court deny the proposed settlement in its current form and instead order the parties to revise the settlement to implement the following changes:

1. Using the current criteria set forth in the Settlement Agreement Section IV, calculate the amount of credit each class member would receive and have Defendants deposit cash in escrow with the class administrator, third-party bank or other fiduciary until the expiration of one year after the "Effective Date" in the current Settlement Agreement.

2. In lieu of credits to each class member, Defendants shall pay each class member the value of their credit, in cash, within one year of the "Effective Date" in the current Settlement Agreement, provided the class member submits the Verification Form to the Settlement Administrator pursuant to Section IV(D) of the current Settlement Agreement in order to claim the value of their credit.

3. One year after the "Effective Date" in the current Settlement Agreement, any remaining funds in escrow that were not claimed by class members are to be distributed to the class members who submitted Verification Forms Form to the Settlement Administrator pursuant to Section IV(D) of the current Settlement Agreement on a pro rata basis.

4. In addition to the class relief, Objectors receive a nominal incentive award of five-hundred dollars ($1,000.00) each, for a total of Three Thousand Dollars, to compensate them for their efforts in objecting to the settlement to provide a significant benefit to all class members. *See Dewey v. Volkswagen of Am.,* 909 F. Supp. 2d 373, 399-400 (D.N.J. 2012), aff'd sub nom. *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191 (3d Cir. 2014).

5. Objector's counsel should be paid between 3% and 15% of the value added to the class. Such awards have been held reasonable in this Court and in the 3rd Circuit. *Dewey*, 909 F. Supp.2d at 395-398 (upholding attorney fee awards to two different objector groups' counsel in amounts of 13.4% and 2.9% of the value of the benefit conferred); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 103 F. App'x 695, 697 (3d Cir. 2004) (upholding an award to objectors' counsel of 1.4% of the amount of Plaintiffs' counsel's attorney fee award, mirroring the objectors estimated 1.4% additional benefit to the class). Alternatively, and at a minimum, Objectors' counsel request that the court award them their fees – calculated on a lodestar basis - and expenses. Objectors'

counsel will submit their detailed invoices for the court's review upon request. Objectors submit this number is reasonable, given the benefit they are providing the entire class of converting the disfavored coupon-based settlement into one where they receive a just and tangible award instead of an award dependent on their continued business with the company that deceived them.

Objectors submit that if their relief requested is granted, then the proposed award to class counsel may be appropriate given that the value to the class can accurately be determined under Objectors' proposal.

## CONCLUSION

WHEREFORE, based on the foregoing, Objectors Derek Hansen, Vytauras Sasnauskas and Ryan Russell respectfully request that this Honorable Court not approve the settlement, as currently proposed, and instead modify the settlement as proposed by Objectors Hansen,

Sasnauskas and Russell, grant Objectors and their counsel the relief requested above and grant all

further relief this court deems just and appropriate.

Respectfully submitted,

FINEMAN KREKSTEIN & HARRIS, P.C.


/S/ Monica M. Littman
RICHARD J. PERR, ESQUIRE
MONICA M. LITTMAN, ESQUIRE
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA 19103-1628
(v) 215-893-9300; (f) 215-893-8719
rperr@finemanlawfirm.com
mlittman@finemanlawfirm.com
*Counsel for Objectors Derek Hansen,*
*Vytauras Sasnauskas, and Ryan Russell*


 /s/ Brendon P. Friesen
BRENDON P. FRIESEN (0076694)
KENNETH E. SMITH (0090761)
**MANSOUR GAVIN LPA**
North Point Tower
1001 Lakeside Avenue, Suite 1400
Cleveland, OH 44114
Phone: 216.523.1500
Fax: 216.523.1705
Email: bfriesen@mggmlpa.com
        ksmith@mggmlpa.com

*Counsel for Objectors Derek Hansen,*
*Vytauras Sasnauskas, and Ryan Russell*

*Pro Hac Vice Admission Pending*

## CERTIFICATE OF SERVICE

A copy of the foregoing *Objection of Derek Hansen, Vytauras Sasnauskas, and Ryan Russell to Settlement Approval* was filed electronically this 15th day of February, 2018. An additional copy was served via U.S. Mail upon the following:

Oren Giskan
Giskan Solotaroff & Anderson
217 Centre Street, 6th Floor
New York, New York 10013

James E. Cecchi
Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068

Suzanne Ilene Schiller
Manko, Gold, Katcher & Fox, LLP
401 City Avenue, Suite 901
Bala Cynwyd, PA 19004

/S/ Monica M. Littman
MONICA M. LITTMAN, ESQUIRE

*Counsel for Objectors Derek Hansen,*
*Vytauras Sasnauskas, and Ryan Russell*

Dated:  February 15, 2018