**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**FINEMAN KREKSTEIN & HARRIS, P.C.**
*A Pennsylvania Professional Corporation*
BY     RICHARD J. PERR, ESQUIRE
           MONICA M. LITTMAN, ESQUIRE
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA  19103-1628
(v) 215-893-9300; (f) 215-893-8719
rperr@finemanlawfirm.com; mlittman@finemanlawfirm.com

| | |
|---|---|
| KYLE CANNON, LEWIS LYONS AND DIANNE LYONS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>ASHBURN CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 16-1452 (RMB)(AMD)<br><br>**OBJECTORS DEREK HANSEN, VYTAURAS SASNAUSKAS, AND RYAN RUSSELL'S RESPONSE TO PROPOSED AMENDMENT TO THE SETTLEMENT AGREEMENT AND RELEASE** |

Objectors Derek Hansen, Vytauras Sasnauskas and Ryan Russell (collectively the "Objectors"), through counsel, hereby respond to the proposed Amendment to the Settlement Agreement and Release (hereinafter, the "Amended Settlement") attached to the March 12, 2018 Letter to the Court filed by Plaintiffs' counsel.

**I.     INTRODUCTION**

On February 15, 2018, Objectors filed their Objection to Settlement Approval and proposed several modifications to the settlement in order to make it fair, reasonable, and adequate. These proposed changes include the following three provisions:

> 1. Using the current criteria set forth in the Settlement Agreement Section IV, calculate the amount of credit each class member would receive and have Defendants deposit cash in escrow with the class administrator, third-party

>    bank or other fiduciary until the expiration of one year after the "Effective Date" in the current Settlement Agreement.
>
> 2. In lieu of credits to each class member, Defendants shall pay each class member the value of their credit, in cash, within one year of the "Effective Date" in the current Settlement Agreement, provided the class member submits the Verification Form to the Settlement Administrator pursuant to Section IV(D) of the current Settlement Agreement in order to claim the value of their credit.
>
> 3. One year after the "Effective Date" in the current Settlement Agreement, any remaining funds in escrow that were not claimed by class members are to be distributed to the class members who submitted Verification Forms Form to the Settlement Administrator pursuant to Section IV(D) of the current Settlement Agreement on a pro rata basis.

Doc. # 55, PageID 688.

The Amended Settlement now provides that a new Section IV.N. will be added, which is as follows:

> Within twelve (12) months following the Effective Date, WTSO shall place into escrow with the Settlement Administrator the sum of $500,000 (the "Cash Fund"). The Cash Fund shall be created by WTSO consistent with its business objectives and will be funded in a manner as explained to Class Counsel.
>
> At the conclusion of the Redemption Period, WTSO will provide the Claims Administrator with an accounting of Class Members with unused Credits in excess of $2.00, and the Settlement Administrator shall mail checks to all such Class Members for their remaining balance, up to the total in the Cash Fund.
>
> If the total cash due to Class Members exceeds the Cash Fund, then the monies will be distributed pro rata based on the amount of remaining Credits to the Class Members entitled to such cash payments. If the cash payments are less than the Cash Fund, up to $35,000 in excess shall be returned to WTSO. Any amounts over $35,000 thereafter remaining in the Cash Fund shall be available as set forth in Amended Section VIII.B.

(Doc. 83-1, PageID 947-48).

The Amended Settlement takes steps in the right direction towards Objectors' proposed solution, but it is not enough to make the settlement fair. And as a threshold matter, Objectors Hansen and Russell are unquestionably Class Members given they purchased Settlement Wines

{01391034;v1}                                             2

under the terms of the Settlement Agreement. Assuming Defendants are correct, they are entitled to a whopping $.20 per bottle purchased during the Class Period. Sasnauskas, on the other hand, spent over $11,390.03 with Defendants over the Class Period. The Objectors clearly have standing.

## II. ARGUMENT

At Objectors' request, the Parties created a cash fund to be deposited in escrow but the amount is likely insufficient to cover unused credits. We know this, as defense counsel advises that, as of March 6, 2018, 34,273 known Class Members out of 243,710 have completed Verification Forms and the total amount of credits that are to be distributed so far are $2,994,907.95. (Doc. #84, PageID 971 - 972). This new cash fund arbitrarily assumes $500,000 is enough to cover unused credits at the end of the Redemption Period. If more than $500,000 remains unused, however, no additional cash is paid to the class. Keep in mind that how the settlement is currently structured, the $10.8 Million is a fictitious liability. It is not until the credits are used that Defendants are on the hook, so to speak. Even then, Defendants are getting the benefit of a customer purchasing wine from their store. So how is that a punishment?

There is no way of knowing how exactly much of the claimed Credits will be utilized until the end of the Redemption Period. WTSO's belief that "WTSO's customers who completed Verification Forms are eager to use those credits" is certainly not indicative of the reality of extremely low redemptive rates in coupon-based settlements. (Doc. # 84-1, PageID 978). It is one thing to fill out an (unnecessary) verification form just to confirm your email address and any "refunds", and another to actually shop for wines and use them on the finite number of wines a class member can apply the credit.

And the Parties' excuse that the verification is needed to confirm the customer is over the age of 21 is another ruse. First, the customer would not be getting a credit if they had not already

shopped (and confirmed their age) on Defendants' website the first time around. Second, the Class Member receiving the credit would have to verify his or her age when purchasing wine. Verification at the Class Member award stage is totally unnecessary.

The Verification is really just a way to reduce the number of claims made by Class Members. Credits should be paid to all Class Members who do not opt out, regardless of whether a Verification Form is submitted. As it stands now, Class Members who do nothing will not receive a dime in exchange for their release. Instead, all Class Members should at least receive $2.00 to be used towards the purchase of wine from Defendants or whatever else they may choose to do with the money. Even if the remaining Class Members who have not yet sent in their Verification, some 209,437 customers, that is still only $418,874.00 of the $10.8 Million calculated value of Credits.

For these reasons, the "Cash Fund" as designated in the Amended Settlement must be for the amount of the calculated value of the credits: $10.8 Million. Any remaining unused credits should be distributed to the Class Members on a pro rata basis, as Objectors suggested in paragraph 3 of their proposed changes to the settlement. This would add significant benefit to the class, not to WTSO or to the attorneys. Defendants presumably can afford the $10.8 Million or they would not have agreed to theoretically credit that amount to the Class Members. Plaintiffs confirm Defendants ability to pay that amount. (Doc. # 88, PageID 1161 - 1162).

At a minimum, the Cash Fund should still be at least the amount of claimed credits at the end of the Verification process which, so far, is $2,994,907.95. Both proposals will reduce the possibility of the value of the unused credits being greater than the Cash Fund. Again, as suggested in paragraph 3 of Objectors' proposed changes to the settlement, any remaining unused credits

should be distributed to the Class Members who claimed their credits on a pro rata basis or even based on Defendants' calculation of the Class Member's remaining credit.

Of course, the simplest solution is for the Parties to adopt paragraph 2 of Objectors' proposed changes to the settlement and convert the coupons to cash and distribute the funds to Class Members based on Defendants' calculated credit amount. Defendants know what Class Members bought and when. They have all that information and should easily be able to identify the amounts and Class Members for the administrator. That they do not have information on refunds issued, which is odd given the data rich environment of online retailing, is a risk Defendants took when they did not maintain those records.

Even with the Parties' proposed Amended Settlement, a basic concern still remains with the settlement. Although the Amended Settlement provides for WTSO to set aside $500,000 in the Cash Fund and $1.2 Million in the "Fee Fund" to be paid to Class Counsel, WTSO still receives the enormous benefit of increased sales from the coupon-based settlement.

Contrary to Plaintiffs' assertion, Objectors are not simply looking for a "better" settlement or some pay day. (Doc. # 88, PageID 1191 – 1192, FN. 29). Objectors are working within the confines of the Settlement Agreement reached between the Parties. As virtually no discovery took place, Objectors do not have the benefit of checking financials or other records to confirm that $10.8 Million is a fair, reasonable and adequate number. Assuming that it is, all Objectors are trying to accomplish is maximize the benefit to the Class. If making the settlement fair, reasonable and adequate is "better" then so be it.

For these reasons, Moving Objectors remain opposed to the settlement, even in its revised form, and request this Court modify the settlement as originally proposed by Objectors in their Objection to Settlement Approval to provide fair, reasonable and adequate relief to the class.

**FINEMAN KREKSTEIN & HARRIS, P.C.**

/S/ Monica M. Littman
RICHARD J. PERR
MONICA M. LITTMAN
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA  19103-1628
(v) 215-893-9300; (f) 215-893-8719
rperr@finemanlawfirm.com
mlittman@finemanlawfirm.com

and

**MANSOUR GAVIN LPA**

/S/ Brendon P. Friesen
BRENDON P. FRIESEN (0076694)
KENNETH E. SMITH (0090761)
North Point Tower
1001 Lakeside Avenue, Suite 1400
Cleveland, OH  44114
(v) 216-453-1500; (f) 216-523-1705
bfriesen@mggmlpa.com
ksmith@mggmlpa.com

*Counsel for Objectors Derek Hansen, Vytauras Sasnauskas and Ryan Russell*

## CERTIFICATE OF SERVICE

A copy of the foregoing Objectors Derek Hansen, Vytauras Sasnauskas and Ryan Russell's Response to Proposed Amendment to the Settlement Agreement and Release was electronically filed this 16th day of March, 2018. An additional copy was served via U.S. Mail upon the following:

>Oren Giskan
>Giskan Solotaroff & Anderson
>217 Centre Street, 6th Floor
>New York, NY 10013
>
>James E. Cecchi
>Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
>5 Becker Farm Road
>Roseland, NJ 07068
>
>Suzanne Ilene Schiller
>Manko, Gold, Katcher & Fox, LLP
>401 City Avenue, Suite 901
>Bala Cynwyd, PA 19004
>
>James Farrell
>Latham & Watkins
>885 Third Avenue
>New York, NY 10022-4834

>/s/ Monica M. Littman
>RICHARD J. PERR
>MONICA M. LITTMAN
>**FINEMAN KREKSTEIN & HARRIS, P.C.**
>
>and
>
>/s/ Brendon P. Friesen
>BRENDON P. FRIESEN (0076694)
>KENNETH E. SMITH (0090761)
>**MANSOUR GAVIN LPA**
>
>*Counsel for Objectors Derek Hansen, Vytauras Sasnauskas and Ryan Russell*