# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| KYLE CANNON, LEWIS LYONS, and DIANE LYONS, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>ASHBURN CORPORATION, WINES 'TIL SOLD OUT (WTSO.COM), and JONATHAN H. NEWMAN,<br><br>　　　　　Defendants. | Civil No. 16-1452 (RMB/AMD)<br><br>**OPINION** |

APPEARANCES:

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
By: James E. Cecchi, Esq.
　　Lindsey H. Taylor, Esq.
5 Becker Farm Road
Roseland, New Jersey 07068

　　and

GISKAN SOLOTAROFF ANDERSON LLP
By: Oren Giskan, Esq.
217 Centre Street, 6th Floor
New York, New York 10013
　　　　Counsel for Plaintiffs

MANKO, GOLD, KATCHER & FOX, LLP
By: Suzanne Ilene Schiller, Esq.
　　Nicole R. Moshang, Esq.
　　James M. McClammer, Esq.
401 City Avenue, Suite 901
Bala Cynwyd, Pennsylvania 19004

　　and

LATHAM & WATKINS LLP
By: James J. Farrell, Esq.
    Gregory Mortenson, Esq.
885 Third Avenue
New York, New York 10022
        Counsel for Defendants

U.S. DEPARTMENT OF JUSTICE, CONSUMER PROTECTION BRANCH
By: Gustav W. Eyler, Esq.
    Joshua D. Rothman, Esq.
P.O. Box 386
Washington, D.C. 20044
        Counsel for Interested Party the United States

MARK BRNOVICH, ATTORNEY GENERAL FOR THE STATE OF ARIZONA
By: Oramel H. Skinner, Esq.
2005 North Central Avenue
Phoenix, Arizona 85004
        Counsel for *Amicus Curiae* Arizona Attorney General on
        behalf of the Attorneys General of Arizona, Alabama,
        Arkansas, Idaho, Indiana, Louisiana, Michigan,
        Mississippi, Missouri, Nevada, North Dakota, Ohio,
        Oklahoma, Rhode Island, South Carolina, South Dakota,
        Texas, Washington, and Wyoming

FINEMAN, KREKSTEIN & HARRIS, P.C.
By: Richard J. Perr, Esq.
    Monica M. Littman, Esq.
1801 Market Street, Suite 1100
Philadelphia, Pennsylvania 19103

    and

MANSOUR GAVIN LPA
By: Brendon P. Friesen, Esq.
    Kenneth E. Smith, Esq.
1001 Lakeside Avenue, Suite 1400
Cleveland, Ohio 44114
        Counsel for Objectors Derek Hansen, Vytauras Sasnauskas,
        and Ryan Russell

DILWORTH PAXSON LLP
By: Joshua Wolson, Esq.
1500 Market Street, Suite 3500E
Philadelphia, Pennsylvania 19102

    and

COMPETITIVE ENTERPRISE INSTITUTE
By:   Adam Schulman, Esq.
1310 L Street, NW 7th Floor
Washington, D.C. 20005
         Counsel for Objector Ryan Radia

EDWARD TAHIR DUCKETT, *pro se*
1355 Shepherd Street, NW #3
Washington, D.C. 20011
         Objector

PATRICK DEAN TAYLOR, *pro se*
311 E. Wabash Avenue
Crawfordsville, Indiana 47933
         Objector

STEVEN D. MAYER, *pro se*
3730 N. Lake Shore Drive, Apt. 10A
Chicago, Illinois 60613
         Objector

WILLIAM B. JAMES, *pro se*
3675 Classic Drive S
Memphis, Tennessee 38125
         Objector

KENDALL M. COX, *pro se*
203 Chamberlain Drive
Dekalb, Illinois 60115
         Objector

KEITH BROWN, *pro se*
8519 Blueberry Circle
Lago Vista, Texas 78645
         Objector

MARI STULL, *pro se*
205 Cameron Street
Alexandria, Virginia 22314
         Objector

**BUMB**, UNITED STATES DISTRICT JUDGE:

Presently before the Court is Plaintiffs' Motion for Reconsideration of the Court's opinion and order of April 17, 2018 denying final settlement approval of this putative class action suit. For the reasons stated herein, the motion will be denied.

## I. PROCEDURAL HISTORY

The opinion at issue is available at Cannon v. Ashburn Corp., No. CV 16-1452 (RMB/AMD), 2018 WL 1806046 (D.N.J. Apr. 17, 2018). Notably, while that opinion decided the parties' joint motion for settlement approval, only Plaintiffs move for reconsideration. Defendant has filed no response to Plaintiffs' motion, nor have any of the previous objectors to the settlement.

## II. LEGAL STANDARD

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i), which provides:

> Unless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59), a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. A brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion.

The purpose of a motion for reconsideration is to present newly discovered evidence or to correct manifest errors of law or fact. Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)) (quoting Harsco

4

Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). Accordingly, the party seeking reconsideration must show at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. It is the latter ground that is at issue here.

**III. ANALYSIS**

Plaintiffs assert that the Court made numerous clear errors of law. Notably, Plaintiffs do not assert that the Court overlooked facts. See Wahab v. New Jersey, 2016 WL 3456913, at *2 (D.N.J. June 20, 2016) ("motions for reconsideration only succeed when there are factual matters or precedent of law that were overlooked by the Court, and the consideration of these overlooked facts or precedent might have reasonably led the Court to a different conclusion."). Indeed, the Court's opinion made clear that it was missing facts. Thus, in this regard, that Plaintiffs do not accuse the Court of overlooking facts tends to lend confirmation to the Court's assessment that too many unanswered questions precluded settlement approval. The Court addresses each asserted legal error in turn.

**(1) Applying the incorrect legal standard / failing to consider all of the Girsh factors**

5

First, Plaintiffs aver that "[i]n lieu of the proper Girsh factors, the Court erroneously adopted a novel standard applied in unpublished, out-of-circuit district court decisions." (Moving Brief, p. 9) Plaintiffs misconstrue the Court's opinion. The legal standards the Court applied are set forth in Section II of the opinion, entitled "Legal Standards." Those standards include Fed. R. Civ. P. 23, Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), and In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 316 (3d Cir. 1998), and do not include out-of-circuit district court opinions. See Cannon, 2018 WL 1806046, at *6.

In the entirety of its 59-page opinion, the Court cites two out-of-circuit district court opinions. They appear in a footnote in support of the sentence, "[a]t this stage of the case, the Court cannot adequately quantify either" the strength of the putative class' claims or the value of what class members will receive in exchange for release of those claims. Cannon, 2018 WL 1806046, at *13 n.23. The two cases cited are simply examples of other proposed class action settlements that were rejected for lack of sufficient information; they illustrate the challenges presented in valuing settlements which include a non-cash component.[1] The Court did not rely on

---

[1] Plaintiffs assert that the Court improperly required the parties to provide the Court with the precise value of the

6

the two cases for the applicable legal standard, and in any event, the Court does not agree with Plaintiffs' assertion that those cases applied a "novel [legal] standard."[2]

---

proposed settlement. The Court did not so require. As extensively discussed in the opinion,

> the parties' papers in support of the proposed settlement are largely *devoid of any numbers* that would answer key questions such as: How many class members have purchased exclusively A wines, B wines, or C wines? How many class members have purchased various combinations of wines-- either A, B and C; A and C; A and B; or B and C? What is the mean, median and/or modal amount of Credits that the 243,710 class members should expect to receive under the proposed settlement? And perhaps most basically, what is the maximum amount of Credit a single class member will receive under the proposed settlement? And what is the minimum? Without answers to these questions, *the Court cannot ascribe any reliable value* to the proposed settlement.

Cannon, 2018 WL 1806046, at *17 (emphasis added); see also, id. at *9 n.14 ("as the case presently stands the Court cannot quantify what th[e] value [of the Credits] is."), *10 n.16 ("'courts will attempt, often through expert testimony, to put a dollar value on the nonpecuniary relief.'. . . 'Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class.'") (quoting 4 Newberg on Class Actions § 12.13 and 2003 Advisory Committee Notes, Fed. R. Civ. P. 23(h)), *16 ("the Court cannot ascribe any concrete, quantifiable value to either the Credits or the injunctive relief"), *19 ("the Court cannot determine the value of the settlement to the class"), *21 ("the parties do not attempt to place a dollar figure on this asserted 'real, quantifiable' value to the class.").

    [2] Galloway v. Kansas City Landsmen, LLC, 2013 WL 3336636, at *1 (W.D. Mo. July 2, 2013), held, "the existing record does not demonstrate that the Amended Settlement offers sufficient value for the class members' claims and therefore is fair, reasonable, and adequate." Similarly, Sobel v. Hertz Corp., 2011 WL 2559565, at *15 (D. Nev. June 27, 2011), held, "the absence of evidence . . . precludes any finding that the settlement is fair, reasonable, and adequate under either Rule 23(e) or [CAFA]." Compare Fed. R.

The Court attempted to assess the strength of the putative class' claims and the value of what class members will receive. As set forth in the opinion's Legal Standards section, Prudential requires that the Court assure itself that "'the settlement represents adequate compensation for the release of the class claims.'" Cannon, 2018 WL 1806046, at *6 (quoting Prudential); see also, In re Baby Prod. Antitrust Litig., 708 F.3d 163, 175 (3d Cir. 2013) ("We vacate the District Court's orders approving the settlement and the fund allocation plan because it did not have the factual basis necessary to determine whether the settlement was fair to the entire class. Most importantly, it did not know the amount of compensation that will be distributed directly to the class.") (cited in Cannon, 2018 WL 1806046, at *1, *6, *10 n.16, *16 n.33, *17, *20).

Second, contrary to Plaintiffs' argument, the Court did consider all of the Girsh factors. Specifically, Plaintiffs assert that the Court failed to consider Girsh factors 1--complexity, expense and likely duration of the litigation; 4--the risks of establishing liability; 5-- the risks of establishing damages; 6-- the risks of maintaining the class action through trial; 8-- the range of reasonableness of the settlement fund in

---

Civ. P. 23(e)(2) ("the court may approve it only after a hearing and or finding that it is fair, reasonable, and adequate."), cited in Cannon, 2018 WL 1806046, at *6.

8

light of the best possible recovery; and 9-- the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

"Girsh factor 6" was explicitly identified and discussed at Cannon, 2018 WL 1806046, at *15 ("Further, as discussed supra, the introduction of the C wines into this case also increases the risk of failing to obtain class certification (Girsh factor 6). The parties have not answered to the Court's satisfaction why the C wines have been included in the proposed settlement class."). Girsh factors 8 and 9 were also explicitly identified, and the Court explained why it could not determine the settlement fund's reasonableness. Id. at *16 n.30 ("For this reason, the Court cannot determine Girsh factors 8 and 9 which both focus on the reasonableness of the settlement fund.").

Additionally, while factors 1, 4 and 5 were not specifically identified as "Girsh factor __," the Court's substantive discussion addressed these factors. Just as the Court explained how the parties failed to provide the Court sufficient evidence as to the value of the settlement, the Court discussed at length its unanswered questions and concerns with regard to the C wines and their place in this litigation. Without such answers, the Court was unable (and remains unable) to ascertain the complexity, expense and likely duration of the

litigation, the risks of establishing liability, or the risks of establishing damages.  As the Court stated, "[t]he parties have not informed the Court how the addition of the C wines has affected the size and make-up of the class." Cannon, 2018 WL 1806046, at *20; see also, id. at *14 ("the parties have very little to offer in terms of evidence to enable the Court to weigh the strength of Plaintiffs' claims based on the A and B wines."); *15 ("The settlement of this case shortly after the disposition of Wines 'Til Sold Out's Motion to Dismiss has effectively prevented the development of the information necessary to assess the strength of Plaintiffs' claims."). Without such information, the Court cannot predict the likely complexity of the litigation, nor the risks of establishing liability and damages.[3]

Thus, the Court did not apply an incorrect legal standard, nor did it incompletely apply the correct legal standard.[4]

---

[3]  Relatedly, Plaintiffs assert, "[t]he Court erroneously suggests that the fact Plaintiffs *may* have 'weak' claims militates against approval." (Moving Brief, p. 6) (emphasis added).  The Court did express doubt as to the strength of Plaintiffs' claims, especially with regard to the C wines.  But the Court did not, and could not, make any factual finding as to the actual strength or weakness of any of claims.  It was this inability to reliably assess the strength or weakness that the Court held militated against approval.

[4]  Plaintiffs also argue that, by relying upon the lack of information concerning both the claims asserted and the value of the proposed settlement, the Court "improperly imposed a formal discovery requirement." (Moving Brief, p. 6)  Plaintiffs' argument in this regard erroneously assumes that the only source of the necessary information is through formal discovery. As the Court observed, at least some of the information should be available to,

10

**(2) The injunctive portion of the settlement**

Next, Plaintiffs assert that "[t]he Court's ascribing of no value to the injunctive relief aspect of the settlement (or its deterrent effect) on the ground that it occurred over a year ago and is not a consideration of settlement . . . is . . . erroneous." (Moving Brief, p. 10 n. 7) The Court did not give "no value" to the injunctive relief. As the Court stated in its opinion, "the parties do not attempt to place a dollar figure on this [injunctive relief component of the proposed settlement] . . . whatever value [the injunctive relief] element adds to the value conferred on the class cannot overcome the other deficiencies discussed in this Opinion." Cannon, 2018 WL 1806046, at *21.

**(3) The Cash Fund portion of the settlement**

Additionally, Plaintiffs assert that "[t]he Court errs in holding that Class Members will not 'receive sufficient compensation' and that, for various reason [sic], the 'size of the Cash Fund' is inadequate." (Moving Brief, p. 8) The Court did not so hold. The Court questioned whether the Cash Fund would be adequate and then observed that even if it were adequate, unanswered questions remain. See Cannon, 2018 WL 1806046, at *20

---

or ascertainable by, the parties outside of formal discovery. See, e.g., Cannon, 2018 WL 1806046, at *20 ("The parties have not even calculated the number of no-ship class members, a number which presumably is rather easy to determine.").

11

("even if the Cash Fund were sufficient-- either with the minimum balance of $500,000, or in some presently unknown larger amount-- the Court questions whether the addition of the cash option, regardless of the amount of cash, complicates the settlement to such an extent that any potential improvement (in terms of added value to the class) is effectively offset."); see also, id. at *9 ("As discussed further infra, the Court *has concerns* that the Cash Fund is insufficiently funded to adequately compensate the class *if* a significant number of class members choose the cash option.") (emphasis added).

**(4) The Credits portion of the settlement**

Plaintiffs also assert that "[t]he Court's determination that the value of the settlement must be assessed based on the value of Credits actually redeemed is also clear error." (Moving Brief, p. 9) According to Plaintiffs, "'the relevant measure is the value of the benefits made available to the class as a whole, not the portion of the benefits ultimately claimed by class members.'" (Id., quoting Gray v. BMW of N. Am., LLC, 2017 WL 3638771, at *4 (D.N.J. Aug. 24, 2017)).

As an initial matter, the settlement at issue in Gray did not involve credits or coupons. More to the point, though, as this Court stated in its opinion, the parties in this case have not provided sufficient information as to the "benefits made available" to the class. The parties still have not provided the

Court answers to the following questions (among others): "[w]hat is the mean, median and/or modal amount of Credits that the 243,710 class members should expect to receive under the proposed settlement? . . . what is the maximum amount of Credit a single class member will receive under the proposed settlement? And what is the minimum?" Cannon, 2018 WL 1806046, at *17.

### (5) **The reversion of unclaimed Credits**

Plaintiffs also contend that "[t]he Court also clearly errs in holding that a reverter weighs against approval because '[t]he deterrent effect will be lost.' The Class has already obtained the deterrent effect because Defendant has agreed, as part of the Settlement, to cease the alleged deceptive practices." (Moving Brief, p. 11) This argument takes the Court's statements out of context. The Court's discussion of this issue was:

> Reversion to the defendant of unclaimed settlement funds is generally disfavored. In re Baby Prod., 708 F.3d at 172 ("Reversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement."). As at least one objector has observed, any unclaimed Credits effectively revert to Wines 'Til Sold Out. Wines 'Til Sold Out argued at the final approval hearing that "[t]here is no reversion because there is no common fund" (Transcript, p. 76), but the Court disagrees. It is true that there is no common fund where Wines 'Til Sold Out has deposited cash. In that sense Wines 'Til Sold Out is correct that there will be no literal reversion. But this is so only because the money connected to the Credits never left Wines 'Til Sold Out in the first place. Perhaps the more appropriate term is "retained" rather than reverted, but the salient point is, at the end of the day the money will be with Wines 'Til Sold Out and not class members. The deterrent effect is still lost. This

additional aspect of the Credits weighs against settlement approval.

Cannon, 2018 WL 1806046, at *20. The Court made no assessment concerning the need for deterrence in this particular case.

**(6) <u>The numerous remaining unanswered questions</u>**

Finally, Plaintiffs assert that "to the extent the Court required additional information, it should have affirmatively sought out such information rather than outright deny final approval." (Moving Brief, p. 2) Such statement is unfortunate. In this Court's view, the Court gave the parties several opportunities to provide the Court with additional information that would answer the questions the Court clearly had at the oral arguments. As set forth in the opinion,

> as of the date of this Opinion, the Court has received and thoroughly reviewed: the parties' joint brief in support of preliminary class certification / preliminary settlement approval; the objectors' submissions—including four legal briefs drafted by counsel, each brief exceeding 20 pages; the parties' joint brief in support of final class certification / final settlement approval; and post-final approval hearing submissions.
>
> In addition to these written submissions, the Court has held two hearings spanning almost six hours. The Court has undertaken all of this in an attempt to ascertain all of the information necessary to decide whether to certify the proposed class and approve the proposed settlement. Unfortunately, despite this Court's best efforts to afford the parties ample opportunity to provide the Court with the information it requires, many fundamental and important questions remain unanswered.

Cannon, 2018 WL 1806046, at *5-6.[5]

**IV. CONCLUSION**

In short, too many questions remain unanswered.  Perhaps it is possible that answering some portion of the Court's questions-- as opposed to every single question-- would fulfill the parties' "'burden of demonstrating that the settlement is fair, reasonable and adequate,'" Cannon, 2018 WL 1806046, at *14 (quoting Sullivan v. DB Investments, Inc., 667 F.3d 273, 320 (3d Cir. 2011)).  At this time, however, too many questions linger.  Accordingly, for the above-stated reasons, Plaintiffs' Motion for Reconsideration will be denied.  An appropriate Order shall issue on this date.

Dated: June 7, 2018

s/ Renée Marie Bumb
_____
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

---

[5]  Certainly, the parties may use the Court's opinion denying final settlement approval as a guide to creating, and then presenting for this Court's approval, a class action settlement that may adequately answer or address the Court's questions and concerns.  Of course, the parties would also need to establish that the proposed class may be certified, an issue which this Court has not yet decided.